IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| YOLANDA JACKSON, )<br>as Administrator of the Estate of )<br>Kevin Curtis, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WEXFORD HEALTH SOURCES, INC., )<br>EVA LEVEN, )<br>MOHAMMED SIDDIQUI, )<br>GAIL WALLS, )<br>NICKOLAS MITCHELL, )<br>CHARLIE FRERKING, )<br>JEREMY FRERICH, )<br>ANDREW BENNETT, )<br>)<br>Defendants. ) | Case No. 20-cv-0900-DWD |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is currently before the Court on the motion to dismiss (Doc. 23) filed by Defendants Wexford Health Sources, Inc., Eva Leven, and Mohammed Siddiqui. For the reasons set forth below, the motion is **GRANTED, in part, and DENIED, in part**.

Plaintiff Yolanda Jackson, as Administrator of the Estate of Kevin Curtis, brings this civil rights and wrongful death complaint against Defendants related to the death of inmate Kevin Curtis at Menard Correctional Center ("Menard") in September 2018. Defendant Wexford is a contracted healthcare provider for Illinois Department of Correction ("IDOC") prisons, including Menard. Leven and Siddiqui are Wexford employees working at Menard. In September 2018, Leven was Menard's Mental Health Services Director and Siddiqui was a physician in charge of inmate care at Menard.

1

Plaintiff asserts five (5) claims against Leven and Siddiqui (along with the other individual defendants in this matter): an Eighth Amendment claim for deliberate indifference (Count I), conspiracy (Count II), Eighth Amendment claim for failure to intervene (Count III), wrongful death pursuant to Illinois' Wrongful Death Act, 740 ILCS 180/1 (Count IV), and damages for pain and suffering pursuant to Illinois' Survival Act, 755 ILCS 5/27-6 (Count V).  Plaintiff also asserts Counts I, IV, and V against Defendant Wexford, along with a separate count for *respondeat superior* (Count VI).

In the complaint, Plaintiff alleged that, at the time of his death, Kevin was a 31-year old inmate at Menard and suffered from schizophrenia (Doc. 1, ¶¶ 1, 20, 22).  Kevin had been a prisoner at Menard since approximately March 2018 (Doc. 1, ¶¶ 2, 20).  On or about August 31, 2018, Kevin was placed on "crisis watch" because mental health providers were concerned that Kevin might harm himself (Doc. 1, ¶¶ 2, 23).  "Crisis watch" involved removing all of Kevin's belongings from his cell and having officers monitor Kevin every ten (10) minutes (Doc. 1, ¶¶ 2, 24-25).

On September 5, 2018 at approximately 8:30 a.m., an officer conducted a wellness check on Kevin and found him catatonic and completely unresponsive (Doc. 1, ¶¶ 3, 26). Officers took Kevin to the prison's healthcare unit but did not treat Kevin's condition as an emergency (Doc. 1, ¶¶ 4, 27).  Kevin was tested for syphilis and sent back to his cell without treatment over the objections of an unnamed healthcare administrator (Doc. 1, ¶¶ 4-5).  Leven and Siddiqui knew of the seriousness of Kevin's catatonia but took no meaningful action to address Kevin's "obvious medical emergency."  (Doc. 1, ¶ 30). Leven further refused to take any action after Menard's Treatment Unit Administrator

2

raised concerns to her over Kevin's condition and encouraged Levin to transfer Kevin to the hospital (Doc. 1, ¶¶ 31-35).  Once Kevin was returned to his cell, the guards stopped conducting "crisis watch" checks on Kevin (Doc. 1, ¶ 6).  Kevin was found dead in his cell at approximately 6:30 p.m. on September 5, 2018 (Doc. 1, ¶¶ 43-44).

## Discussion

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendant Leven from Count II (conspiracy) and Count III (failure to intervene), to dismiss all claims against Defendant Siddiqui, and to dismiss Defendant Wexford from Count VI (*respondeat superior*).  The purpose of a Rule 12(b)(6) motion to dismiss is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

For a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements."

*Twombly*, 550 U.S. at 555.  A plaintiff must provide enough detail "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (internal citations and markings omitted); *Lang v. TCF Nat. Bank*, 249 F. App'x 464, 466 (7th Cir. 2007).  For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012); *Gibson*, 910 F.2d at 1521.

### Count II (Conspiracy)

The Seventh Circuit has remarked that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).  After reviewing the entirety of the allegations in the Complaint, the Court finds that Plaintiff sufficiently pled her conspiracy claim against both Leven and Siddiqui.  First, Plaintiff indicates that the claim is directed at the medical providers present in the health care unit when Kevin was brought in, which includes Siddiqui and Leven.  Second, the general purpose of the conspiracy is set forth as an attempt to deny Kevin his constitutional rights by not evaluating or treating him before sending him back to his cell, and to further protect one another from liability.  Finally, the date of the agreement has been identified as September 5, 2018. While these allegations may not provide much in the way of specifics, coupled with the narrative in the Complaint, the Court finds them

4

to be sufficient to adequately state a claim for conspiracy against Defendants Leven and Siddiqui. Accordingly, Defendants' motion to dismiss this claim is denied.

## Count III (Failure to Intervene)

To state a claim for failure to intervene, Plaintiff must allege that "a constitutional violation has been committed by a state actor; *and* the defendant had a realistic opportunity to intervene to prevent the harm from occurring." *Piercy v. Whiteside County, Illinois*, 2016 WL 1719802, at *7 (N.D. Ill. 2016) (citing *Abdullahi v. City of Madison*, 423 F.3d 763, 744) (7th Cir. 2005) (internal markings omitted) (emphasis in original); *see also Yang v. Hardin*, 37 F.3d 282, 284-85 (7th Cir. 1994) (collecting cases). Here, Plaintiff has alleged deliberate indifference to Kevin's serious medical needs (both his emergent catatonic state, and his underlying mental health issues) as the underlying constitutional violation, and alleges that Defendants Leven and Siddiqui observed or knew of Kevin's medical needs but took no action.

Plaintiff's allegations here are closely connected with her deliberate indifference claims. Specifically, Plaintiff argues that Leven and Siddiqui were not only deliberately indifferent to Plaintiff's need for emergent medical attention, but that they were also aware of the failure of other Defendants to provide appropriate medical care and failed to intervene. In reviewing the Complaint as a whole, Plaintiff presents a narrative where Kevin's presence in the healthcare unit where Leven and Siddiqui were on September 5, 2018, provided a reasonable opportunity for Leven and Siddiqui to intervene and prevent the violation of Kevin's constitutional rights and death. Again, while these allegations may not provide much in the way of specifics, coupled with the narrative in the

Complaint, the Court finds that this claim is adequately plead against Defendants Leven and Siddiqui. A more developed factual record might defeat this claim, however, at this juncture, the Court finds that claim is adequately plead and Defendants' motion to dismiss this claim is denied.

## Remaining Counts against Defendant Siddiqui

As mentioned above, Plaintiff's allegations are sufficient to state claims for conspiracy and failure to intervene against Defendant Siddiqui. Likewise, the allegations in the Complaint are sufficient to state claims against him for deliberate indifference (Count I), wrongful death (Count IV), and damages for pain and suffering (Count V).

To state a claim for deliberate indifference, Plaintiff must allege that an objectively serious injury or medical need was deprived, and that the defendant knew that the risk of injury was substantial but failed to take reasonable measures to prevent it. *Chapman v. Keltner*, 241 F.3d 842, 845–46 (7th Cir. 2001). "Under the first prong, an objectively serious injury or medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Id.* (internal citations and quotations omitted). "Under the second prong, it must be shown 'that the official was aware of the risk and consciously disregarded it nonetheless.'" *Id.* (citing *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir.1997) and *Farmer v. Brennan*, 511 U.S. 825, 840–42, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Here, Plaintiff alleges that Siddiqui was aware of Kevin's emergent and catatonic state yet refused to treat it. These allegations are sufficient to state a claim for deliberate indifference against Siddiqui.

6

These allegations are also sufficient to sustain Plaintiff's claims under Illinois's Wrongful Death Act and Survival Act. *See Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2011) (the standard for "willful and wanton" is essentially the same as the deliberate indifference standard). Briefly, to state a claim under the Illinois Wrongful Death Act, Plaintiff must allege: (1) that defendant owed a duty to the decedent, (2) breached that duty, (3) the breach of duty proximately caused decedent's death, and (4) damages occurred to designated persons under the Act. *Rodgers v. Cook County*, 2013 IL App (1st) 123460, ¶ 31 (citing 740 ILCS 180/1). Plaintiff's allegations satisfy the first three prongs here. Further, to satisfy the fourth prong, the Illinois Supreme Court has held that "an allegation of the survival of beneficiaries of the class who may recover under the statute" is enough to sustain a wrongful death claim. *Gustafson v. Consumers Sales Agency*, 414 Ill. 235, 244-45 (Ill. 1953); *Rodgers*, at ¶¶ 31-32. Here, Plaintiff's position as Kevin's mother, and a beneficiary under the statute, is enough to satisfy this final prong. As for the Illinois Survival Act, it allows for the recovery of damages for injury sustained by the deceased up to the time of death, and preserves the causes of action on behalf of decedents that would otherwise be rendered moot upon the death of the decedent, including Plaintiff's claim here for Kevin's pain and suffering under a negligence or willful and wanton theory. *Rodgers*, at ¶ 29. Accordingly, this claim is also adequately plead, and Defendant Siddiqui's motion to dismiss this claim is denied.

## Count VI (Respondeat Superior)

Defendant Wexford argues that Plaintiff's Count VI alleging respondeat superior liability under both § 1983 and state law should be dismissed because the doctrine of

7

respondeat superior is not applicable to § 1983 claims. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("*Respondeat superior* liability does not apply to private corporations under § 1983"); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Plaintiff acknowledges that this doctrine of respondeat superior does not apply to claims which arise under § 1983 under current precedent in this Circuit, however, Plaintiff encourages the Court to depart from this existing precedent by arguing that the Seventh Circuit has signaled that this issue should be revisited. The Court will not do so.

Instead, under current precedent, a private corporation, like Defendant Wexford, will generally only be held liable under § 1983 for an unconstitutional policy or custom that results in the injury at issue. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015); *Shields*, 746 F.3d at 789. This liability "is not founded on a theory of vicarious liability or *respondeat superior* that holds a municipality responsible for the misdeeds of its employees. Rather, a municipal policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff alleges liability under § 1983 against Wexford in Count I of her Complaint, the sufficiency of which is not challenged here. Plaintiff cannot, however, also maintain a claim for respondeat superior liability pursuant § 1983 against Defendant Wexford, and that claim is accordingly **DISMISSED**.

Likewise, for Plaintiff's state law claims, the Illinois Supreme Court has held that respondeat superior, in and of itself, is not a separate claim, but merely a theory of recovery. *Armbruster v. Wexford Health Sources, Inc.*, 16-cv-544-MRJ, 2017 WL 2619032, at

8

*3 (S.D. Ill. June 16, 2017) (citing *Wilson v. Edward Hosp.*, 981 N.E.2d 971 (Ill. 2012) (finding that respondeat superior was "merely part of the duty analysis in a case where the plaintiff seeks to hold the principal [the hospital] liable for the agent's [(the doctor's)] alleged negligence."). As such, the Court finds that Plaintiff's claim under Count VI, setting forth a distinct claim of respondeat superior liability apart from Plaintiff's state law claims, is improperly pleaded as a separate count and should, therefore, be dismissed. *See also Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403, at *3 (N.D. Ill. March 3, 2016). Although Plaintiff's Count VI is dismissed as a separate cause of action, Plaintiff may pursue respondeat superior against Defendant Wexford as a theory of its claims under Illinois' Wrongful Death Act and Survival Act pursuant to 740 ILCS 180/1 (Count IV), and 755 ILCS 5/27-6 (Count V) for the acts of Defendants Leven and Siddiqui.

## Disposition

For the above stated reasons, Defendants' Motion to Dismiss (Doc. 23) is **GRANTED, in part, and DENIED, in part**. Plaintiff's Count VI for Respondeat Superior against Defendant Wexford is **DISMISSED**. Counts I, II, III, IV, and V of Plaintiff's Complaint remain.

**SO ORDERED.**

Dated: June 16, 2021

_____
DAVID W. DUGAN
United States District Judge