IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YOLANDA JACKSON, as Administrator of the Estate of Kevin Curtis, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-cv-0900-DWD |
| WEXFORD HEALTH SOURCES, INC., et al., | ) ) ) | |
| Defendants. | ) | Hon. David W. Dugan, Judge |

**PLAINTIFF'S MOTION FOR ENTRY OF A
<u>HIPAA-QUALIFIED PROTECTIVE ORDER</u>**

Plaintiff, through her undersigned counsel, hereby moves the Court to enter a HIPAA-qualified protective order pursuant to 45 C.F.R. § 164.512(e). Pursuant to the Local Rules, a proposed order is being transmitted to the Court's chambers via email concurrently with this motion.

### INTRODUCTION

The proposed order would modify the existing protective order in this case, Dkt. 41, in one substantive respect: the existing protective order applies only to the protected health information ("PHI") of Kevin Curtis, the decedent in this case, and the proposed protective order would cover the PHI of third parties as well. Under HIPAA, such a protective order is procedurally required to permit discovery about how Wexford treated other patients, not just Mr. Curtis.

Counsel for Plaintiff has consulted with counsel for Defendant Wexford via email and telephone, and has provided a copy of the proposed protective order. Wexford opposes Plaintiff's motion. Wexford appears to have taken that position across the board, both in the past and today. Accordingly, counsel for the plaintiffs in the following cases, which have all been brought

against Wexford, are filing simultaneous motions for entry of the same HIPAA-qualified protective order:[1]

*Jackson v. Wexford Health Sources, Inc.*, No. 20-cv-00900 (S.D. Ill.) (Dugan, J.) (present case, schizophrenic man dies after Wexford medical personnel ignore his catatonia and refuse to send him for medical care, against request of IDOC mental health personnel)

*Johnson-Barker v. Wexford Health Sources, Inc.*, No. 21-cv-01234 (C.D. Ill.) (Shadid, J.) (man suffering from schizophrenia dies of dehydration after Wexford medical and mental health personnel ignore his acute mental health crisis where he stops eating or drinking)

*McCaffrey v. McAtee*, No. 21-cv-03029 (C.D. Ill.) (Darrow, C.J.) (signs of labor dismissed in woman near term by Wexford medical personnel, forcing her to give birth unassisted in a prison shower room)

*Wiley v. Wexford Health Sources, Inc.*, No. 3:21-cv-00599 (S.D. Ill.) (Gilbert, J.) (Wexford medical personnel fail to take basic diagnostic steps to determine why man has been losing weight and suffering from severe abdominal pain for months on end; after man is finally sent to outside emergency room he is diagnosed with advanced abdominal cancer, but Wexford responds slowly in obtaining chemotherapy)

The HIPAA-qualified protective order that the plaintiff is proposing in each of these cases is also identical to the HIPAA-qualified protective order proposed by the plaintiff in *Reed v. Wexford Health Sources, Inc.*, No. 20-cv-1139, 2021 WL 5578076 (S.D. Ill. Oct. 19, 2021), which the district court entered over Wexford's objection. *Id.*

In each of the four cases cited above, as well as the *Reed* case, the plaintiff has alleged, pursuant to *Monell v. Department of Social Services*, 436 US 658 (1978), that Wexford has widespread practices of providing inadequate medical care that have harmed the decedent. The Seventh Circuit has repeatedly held that to prove such claims, a *Monell* plaintiff almost always must present evidence of ***other incidents*** that indicate the existence of the widespread practice the plaintiff contends caused the injury. In other words, where a Section 1983 plaintiff claims

---

[1] A copy of the motions being filed in *Johnson-Barker*, *McCaffrey*, and *Wiley*, and the accompanying proposed HIPAA-qualified protective order, are attached to this motion as Exhibits 7, 8, and 9.

that the constitutional injury was caused by a widespread practice of inadequate medical care, the Court of Appeals has found that the plaintiff typically must show that ***other prisoners*** (not just the plaintiff or decedent) were subjected to the same widespread practice of inadequate care. This rule makes the medical care provided to other patients of central relevance to these plaintiffs' *Monell* claims. The law unquestionably allows plaintiffs advancing colorable *Monell* claims to obtain the discovery required to sustain such claims at trial. A third-party protective order, under 45 C.F.R. § 164.512(e), ensures that third-party medical information will be handled in accordance with HIPAA's requirements. Yet Wexford has vigorously fought to prevent the entry of these orders, attempting to use HIPAA as a shield to prevent discovery of *Monell* evidence, and then later arguing at summary judgment—often successfully—that the lack of that same evidence mandates judgment in its favor. Wexford's opposition is not tied to concerns about HIPAA compliance—that would be easily addressed by entry of the proposed HIPAA-qualified protective order—but is instead bald gamesmanship. This Court should grant Plaintiff's motion and enter the HIPAA-qualified protective order that permits Plaintiff to obtain the discovery necessary to investigate the *Monell* claims in this case.

## CASE-SPECIFIC BACKGROUND[2]

This is a civil rights action brought under 42 U.S.C. § 1983 by Yolanda Jackson, the mother and administrator of the estate of Kevin Curtis. Prior to his death, Mr. Curtis was incarcerated at Menard Correctional Center and had been diagnosed with schizophrenia. Dkt. 1 ¶ 22. On the morning of September 5, 2018, an IDOC officer found Mr. Curtis catatonic and totally unresponsive. *Id.* ¶ 26. Mr. Curtis was brought to the healthcare unit at Menard in a

---

[2] This section of Plaintiff's motion is specific to the factual claims in this case. The remainder of Plaintiff's motion is substantively identical to the *Johnson-Barker*, *McCaffrey*, and *Wiley* cases listed on page 2, *supra*.

wheelchair, so that he could be examined by employees of Defendant Wexford. *Id.* ¶ 27. Instead of providing any care to address Mr. Curtis's grave condition, Wexford staff took a routine blood and urine sample from Mr. Curtis and directed correctional staff to return him to his cell. *Id.* ¶ 30. Mr. Curtis remained catatonic as he was returned to his cell in a wheelchair by correctional staff. *Id.* An IDOC administrator saw Mr. Curtis being transported back to his cell, and saw that the urine taken from Mr. Curtis reflected serious dehydration, which she suspected indicated Mr. Curtis had not been eating or drinking because of his catatonia. *Id.* ¶ 31. The administrator recognized that Mr. Curtis was suffering a medical emergency and advocated to Wexford staff to send him to a hospital so he could receive emergency treatment. *Id.* ¶¶ 32-34. But Wexford staff refused. *Id.* ¶ 34. Instead, Wexford employees consigned Mr. Curtis to a cell, where he was found dead hours later. *Id.* ¶ 44.

Ms. Jackson has sued individual Wexford employees as well as Wexford itself, pursuant to *Monell*, for the violation of Mr. Curtis's constitutional rights that led to his death. In support of her *Monell* claims, Plaintiff alleges that Wexford has widespread practices of denying adequate medical care to other prisoners at Menard. *Id.* ¶¶ 56-58. Plaintiff further alleges that Wexford's widespread practices led to the denial of care to Mr. Curtis that caused his death. *Id.* ¶¶ 58-61.

As part of discovery on her *Monell* claims against Wexford, Plaintiff has served written discovery on Wexford, seeking documents relating to medical care (or complaints about medical care) provided to other prisoners who have died at Menard or otherwise received inadequate care. Ex. 1 (Pl.'s First Set of Req. for Prod.) at 8. Wexford has refused to produce any responsive documents, relying in part on the lack of any HIPAA-qualified protective order permitting the production of third-party medical records. Ex. 2 (Wexford's Second Supp. Resp. to Pl.'s First Set

of Req. for Prod.) at 4-5 (citing HIPAA as the basis upon which Defendants objected to production of medical records of non-parties).

Plaintiff's counsel provided the proposed HIPAA protective order to counsel for Wexford and explained the need for such an order in this case, given Plaintiff's burden under established Supreme Court and Seventh Circuit precedents to gather and present information about the medical treatment of prisoners other than herself. Wexford's counsel has refused, and has made clear that Wexford intends to maintain its objection to *any* HIPAA-qualified protective order in *any* case that would permit discovery into the medical records of other prisoners (regardless of the substance of any plaintiff's *Monell* claim or the legal rules governing it).³

## ARGUMENT

The entry of a HIPAA-qualified protective order like the one Plaintiff seeks here is usually a matter of routine housekeeping. It is contested in this case—and in *Johnson-Barker*, *McCaffrey*, and *Wiley*—because Wexford has adopted a litigation strategy of misusing patient privacy law to withhold evidence necessary for *Monell* claims that have been asserted against it.

In cases after case, Wexford first objects during discovery that HIPAA-qualified protective orders should not be entered and the PHI of third parties should not be disclosed because doing so will undo the privacy interests of those third parties that HIPAA protects. This argument makes little sense because HIPAA itself provides appropriate protections for the gathering of such third-party PHI as part of litigation through the *use* of the protective order that Plaintiff seeks here. If Wexford can prevent third-party discovery by blocking a HIPAA-

---

³ IDOC defendants have taken Wexford's lead, and also oppose the entry of HIPAA-qualified protective orders in cases that concern unlawful widespread practices, as they have in other cases where a HIPAA-qualified protective order was ultimately entered. *See, e.g.*, *Andrews v. Rauner*, No. 18-cv-1101, Dkt. No. 39 (C.D. Ill. Dec. 11, 2018) (IDOC defendants' opposition to HIPAA-qualified protective order in case alleging widespread practice of inadequate mental health care).

5

qualified protective order, it will then move at summary judgment for dismissal of the *Monell* claims against it, on grounds that the plaintiff failed to obtain the third-party medical evidence that the plaintiff needed a HIPAA-qualified protective order to obtain.

Sharp practices like this have no place in federal court. It is well settled that in litigation, a person's medical privacy is safeguarded by HIPAA-qualified protective orders, just like the order Plaintiff seeks to have entered in this case. As such, courts in this Circuit have rejected efforts like Wexford's repeatedly, and they have even sanctioned Wexford specifically for invoking patient privacy to obstruct appropriate *Monell* discovery. Plaintiff gathers those authorities herein. At this point, it suffices to say that Wexford's continued objection to HIPAA-qualified protective orders have the basic purpose of frustrating legitimate discovery and exhausting or deterring civil rights plaintiffs by driving up the costs of litigation against it.

### A. Plaintiff requires third-party PHI to prove *Monell* claims against Wexford.

Plaintiff has brought a Section 1983 claim against Wexford pursuant to a *Monell* widespread practice theory. *See supra* at 2-5. When a Section 1983 plaintiff brings a *Monell* widespread-practice claim against a corporate entity like Wexford, she is almost never allowed to rely on the decedent's medical care alone to substantiate her claim. To the contrary, the Seventh Circuit has repeatedly required parties seeking to hold corporate defendants like Wexford accountable under a *Monell* widespread practice theory to present evidence showing that the corporation's alleged misconduct is widespread—through evidence that the practice was imposed not just on the particular plaintiff, but on numerous other patients as well. *See, e.g.*, *Daniel v. Cook Cnty.*, 833 F.3d 728, 734-35 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [the plaintiff] must show more than the deficiencies specific to his own experience, of course."); *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) ("[T]here can be little doubt that a practice or custom

theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways."); *Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020) (affirming summary judgment in Wexford's favor on the plaintiff's *Monell* claim based on the plaintiff's failure to provide evidence regarding other incarcerated individuals); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 237 (7th Cir. 2021) (overturning *Monell* jury verdict against Wexford where the plaintiff "did not introduce evidence that [the alleged unconstitutional practice] had caused unconstitutional [medical care] for other prisoners").

As the captions in the cases above indicate, Wexford has been a vigorous advocate for demanding evidence that it provided inadequate medical care to other patients. Indeed in *Dean*, Wexford recently secured a reversal of a $11 million jury verdict against it based on the lack of evidence at trial of treatment provided to individuals *other* than the plaintiff. *Dean*, 18 F.4th at 234-39. Wexford successfully argued to the Court of Appeals that the jury verdict against it for maintaining an unconstitutional collegial review policy should be overturned because the plaintiff provided evidence "only with respect to [p]laintiff's own treatment, offering no evidence that the process failed other inmates," which "[fell] well short of establishing an unconstitutional policy, practice, or custom." Ex. 3 (Wexford's App. Br., *Dean v. Wexford Health Sources, Inc.*, No. 20-3058 (7th Cir. Jan. 15, 2021)) at 35.

Wexford, in short, has been exceptionally successful in demanding that *Monell* plaintiffs must come forward with evidence of inadequate medical treatment that it provided to other prisoners in order to maintain a Section 1983 claim against the company. That success, however, has a corollary: under Rule 26(b)(1), Wexford's treatment of other incarcerated patients is of central relevance in *Monell* discovery against it. As Judge Hamilton noted in *Hildreth*, "Wexford

7

should be careful what it asks for. Its lawyers have won this case, but on theories and arguments that invite—indeed, virtually require—much broader, more intrusive, and more expensive discovery in similar cases." 960 F.3d at 432 (Hamilton, J., dissenting). That, indeed, is the law. District courts, which oversee the scope of discovery, have repeatedly ordered that *Monell* plaintiffs must be permitted to obtain discovery into the PHI of third parties precisely because that evidence is centrally relevant to *Monell* cases against Wexford. *See, e.g.*, *Green v. Meeks*, No. 20-cv-00463, 2021 WL 3631264, at *4 (S.D. Ill. July 14, 2021) (affirming discovery of healthcare provided to other prisoners in a *Monell* case against Wexford because "Plaintiff is required to show 'systemic and gross deficiencies' that have impacted others in IDOC custody"); *Arsberry v. Wexford Health Sources, Inc.*, No. 17-cv-50044, 2021 WL 5232733, at *5 (N.D. Ill. Nov. 10, 2021) (approving discovery regarding medical care provided to other prisoners over Wexford's objection because "Plaintiff's *Monell* claim alleges an unconstitutional policy or practice . . . . Accordingly, Plaintiff must show a sufficiently widespread practice affecting other inmates . . . , which necessarily goes beyond the specific inadequate medical treatment he received."); *Reed v. Wexford Health Sources, Inc.*, No. 20-cv-01139-SPM, 2021 WL 5578076, at *2 (S.D. Ill. Oct. 19, 2021) ("To succeed on a claim against Wexford, a plaintiff is required to show systemic and gross deficiencies that have impacted others in IDOC custody not just the plaintiff. Thus, generally speaking, third party medical information is discoverable." (quotation and citation omitted)); *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at *3 (N.D. Ill. Nov. 24, 2020) (ordering production of third-party medical information as necessary to prove the plaintiff's *Monell* claim against Wexford).

Like the plaintiff in each of these cases—and the plaintiffs in *Johnson-Barker*, *McCaffrey*, and *Wiley*—Plaintiff's *Monell* claim in this case gives her the right to gather

evidence about the medical care that Wexford provided to other prisoners, not just the decedent. Under Rule 26(b)(1), the medical records of other prisoners are relevant, important, and proportional to the claims and defenses in this case.

### B. HIPAA establishes a mechanism for obtaining third-party PHI in discovery: the entry of a HIPAA-qualified protective order under 45 C.F.R. § 164.512(e).

To gather the relevant medical records of other Wexford patients—their PHI, in the parlance of HIPAA—Plaintiff requires the entry of a "HIPAA-qualified protective order." The purpose of the order is to permit discovery into the healthcare Wexford provided to other prisoners, by allowing the gathering of those prisoners' PHI.

Outside of the context of litigation, HIPAA's protective measures (which are promulgated through enabling regulations) generally safeguard the privacy of PHI by providing that a person's PHI may only be disclosed if the person is (1) notified of the disclosure and (2) consents to it. *See* 45 C.F.R. §§ 164.508; 164.510. In the context of litigation, on the other hand, HIPAA safeguards the privacy of a person's PHI through protective orders. HIPAA's regulations set out that disclosure of a person's PHI "[i]n response to a subpoena, discovery request, or other lawful process" is permitted without notice and consent so long as the requesting party has secured "a qualified protective order." 45 C.F.R. § 164.512(e)(1)(ii); *see also id.* ("A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section . . . ."). A "qualified protective order," in turn, is one that (a) prohibits the parties from using or disclosing a third party's PHI for any purpose other than the lawsuit, and (b) requires the return or destruction of the PHI at the conclusion of the lawsuit. *Id.* Thus, whereas HIPAA generally protects the privacy of a person's PHI through the notice and consent requirements, in the context of litigation, HIPAA protects the

9

privacy of a person's PHI through entry of a qualified protective order and compliance with its terms. *See id.* § 164.512(e)(1)(v).

The protective order proposed by Plaintiff satisfies Section 164.512(e). It:

- Designates third-party PHI as confidential (*see* proposed HIPAA order ¶ 3);
- Provides that such PHI may only be used for the present litigation (*id*. ¶ 4); and
- Provides that such PHI must be returned or destroyed when the litigation concludes (*id.* ¶ 5).

These three provisions protect the confidentiality of that PHI by ordering the parties to keep the PHI confidential, and destroy or return it at the end of the case. HIPAA "unequivocally permits health care providers and other covered entities to disclose protected health information . . . in judicial proceedings" when such a qualifying protective order has been entered. *Sanchez v. McCray*, No. 05-cv-22171, 2008 WL 11452601, at *3 (S.D. Fla. Feb. 25, 2008) (citing *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004)). *Accord In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 53-54 (E.D.N.Y. 2008) ("Under section 164.512, it is evidently denudate that a purpose of HIPAA was that health information, that may eventually be used in litigation or court proceedings, should be made available during the discovery phase." (citing Section 164.512(e)(1)(ii) (quotation omitted))).

### C. Wexford's professed concern for the privacy of other prisoners is addressed by the HIPAA order itself.

Plaintiff's counsel has provided the proposed protective order to Wexford, and Wexford does not dispute that it satisfies Section 164.512(e). Nevertheless, Wexford opposes entry of the HIPAA protective order, claiming it would eliminate the privacy rights of its prisoner-patients.[4]

---

[4] It is notable that the same persons whose purported privacy interests Wexford is using to obstruct Plaintiff's *Monell* discovery against it have sued the State of Illinois, claiming that both the medical and mental health care Wexford provides is so deficient as to be unconstitutional. *See Lippert v. Ghosh*, No. 10-cv-4603, 2017 WL 1545672, at *1 (N.D. Ill. Apr. 28, 2017); *Rasho v. Jeffreys*, 22 F.4th 703, 706 (7th

Courts, however, have repeatedly rejected this argument—not because they are unconcerned with the privacy of Wexford's patients, but because HIPAA protective orders themselves protect those privacy interests, and they do so under penalty of sanction. *See Green*, 2021 WL 3631264, at *4 ("As to the arguments raised by [Wexford] regarding the disclosure of the protected health information of non-parties, the Qualified Protective Order entered pursuant to [HIPAA] adequately protects the health information of non-parties from unauthorized disclosure."); *Reed*, 2021 WL 5578076, at *3 (rejecting Wexford's objection that entering HIPAA order "violates the policy of HIPAA," since "it is not clear to the Court how agreeing to the entry of a protective order that meets the requirements of HIPAA [] could also violate the 'spirit [of] HIPAA,' as they contend."); *Andrews v. Rauner*, No. 18-cv-1101, Dkt. 40 at 3 (C.D. Ill. Dec. 13, 2018) (attached as Ex. 4) (rejecting objection by Wexford co-defendant to entry of HIPAA order because "[a] HIPAA qualified protective order is sufficient to protect such medical records from disclosure in discovery in this federal question matter.").

One decision is particularly notable. In *Lippert v. Ghosh*, No. 10-cv-04603 (N.D. Ill.), the district court certified an injunctive class action challenging the constitutional adequacy of medical care provided to people imprisoned in the IDOC, and it ordered two teams of medical experts to survey the quality of the medical care that Wexford provided by examining and reporting on the medical records of hundreds of Wexford patients. Plaintiffs from another civil rights action, the *Reed* case cited above at 8, moved to amend the *Lippert* protective order governing those medical records, so that the *Reed* plaintiffs' own experts could examine the records themselves. *Lippert*, Dkt. 1534 at 2-3 (N.D. Ill. Feb. 24, 2022) (attached as Ex. 5). Wexford opposed the motion, arguing that permitting the plaintiffs' counsel access to the

---

Cir. 2022). The State of Illinois has settled both cases. *See Rasho*, 22 F.4th at 706; *Lippert*, Dkt. 1557 (N.D. Ill. June 24, 2022) (amended consent decree).

documents would "strip away confidentiality" of the patients whose care was at issue. *Id.* at 8. The *Lippert* court rejected that argument, because the *Reed* plaintiffs had already obtained a HIPAA-qualified protective order in the *Reed* case itself (the *Reed* protective order is substantively identical to the one proposed by this motion, and is attached as Ex. 6). *See* Ex. 5 at 8. Because the *Reed* protective order was a HIPAA-qualified protective order, the *Lippert* court held, it would "adequately protect the privacy interests of the inmates" whose information was being requested. *Id*. In short: the *Lippert* court, which oversees protective orders covering the PHI of hundreds of prisoners surveyed in reports issued by the *Lippert* experts, found that the *Reed* HIPAA-qualified protective order—which is substantively identical to the one proposed in this motion—was sufficient to protect the privacy of those prisoners.

\* \* \*

The authorities surveyed in this motion establish (a) that third-party medical records are a crucial and established part of discovery in cases like this one where the plaintiff has brought a *Monell* claim against Wexford based on its alleged widespread practices, and (b) that HIPAA-qualified protective orders are the appropriate way to ensure that the confidentiality of those records is protected. Wexford's arguments to the contrary are nothing more than an attempt to use HIPAA and purported privacy concerns to block access to facts that bear centrally on Plaintiff's *Monell* claims. This is improper. Indeed, Wexford was recently sanctioned for engaging in just this type of misconduct. *Haywood v. Wexford Health Sources, Inc.*, No. 16-cv-3566, 2021 WL 2254968, at \*3, 15 (N.D. Ill. June 3, 2021) (sanctioning Wexford $25,311 for refusing to disclose third-party PHI based on its claimed "obligation to protect the HIPAA protections afforded to all inmates other than Donald Haywood" and its claim that "HIPAA forbade it to disclose to plaintiff the PHI for 'thousands of' non-party inmates that is contained" in responsive discovery materials (quoting Wexford briefs)).

After the string of cases rejecting Wexford's attempts to resist entry of HIPAA-qualified protective orders, one might expect that a decision like *Haywood* would cause Wexford to change course. The company, however, does not appear to be deterred in the least. If *Johnson-Barker*, *McCaffrey*, *Wiley*, and this case are any indication, Wexford continues to repurpose HIPAA to frustrate necessary and legitimate discovery into the manner in which it delivers medical care. Wexford evidently hopes that if it can successfully block the entry of the proposed HIPAA-qualified protective order (or simply deter unschooled or under-resourced *Monell* plaintiffs from seeking one), it can successfully bind its own hands in discovery and ensure that it is not obligated to produce evidence that would show the violation of Mr. Curtis's constitutional rights was not an isolated incident but was instead part of Wexford's widespread practice of prioritizing its profits over patient care. That maneuver should be rejected.

It is Rule 26(b)(1), not HIPAA, that controls the proper scope of discovery in this case, including whether discovery requests are proportional to the needs of a case. And Wexford, of course, may object to Plaintiff's *Monell* discovery pursuant to Rule 26 and the other Federal Rules of Civil Procedure. *Cf. Cutting v. United States*, No. 07-cv-02053, 2008 WL 1775278, at *2 (D. Colo. Apr. 14, 2008) ("In the absence of a [HIPAA] privilege, [discovery of third-party PHI is] governed by issues of relevance and confidentiality commonly addressed in civil lawsuits." (citing *Ashcroft*, 362 F.3d at 926)). What Wexford may not do is exactly what it is attempting here: to weaponize HIPAA to litigate the scope of discovery in a *Monell* case about its widespread practices in the delivery of healthcare, where the PHI of third parties will be of central importance in the claims asserted against it.

## CONCLUSION

For the foregoing reasons, this Court should enter Plaintiff's proposed HIPAA-qualified protective order, to be transmitted to the Court electronically concurrently with this Motion, supplanting Dkt. 41, which is the existing HIPAA-qualified protective order in this case.

June 29, 2022                                   Respectfully submitted,

                                                /s/ Sarah Grady
                                                Sarah Grady
                                                Attorney for Plaintiff

Sarah Grady
Howard Kaplan
KAPLAN & GRADY LLC
1953 N. Clybourn Ave., Suite 274
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com

14

## CERTIFICATE OF SERVICE

    I, Sarah Grady, an attorney, hereby certify on June 29, 2022, I caused the foregoing to be filed using the Court's CM/ECF, which effected service on all counsel of record.

                                             /s/ Sarah Grady
                                             Sarah Grady
                                             Attorney for Plaintiff