IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YOLANDA JACKSON, as Administrator of the Estate of Kevin Curtis, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 20-cv-0900-DWD |
| WEXFORD HEALTH SOURCES, et al. | ) ) ) | |
| Defendants. | ) | Hon. David W. Dugan |

**PLAINTIFF'S REPLY IN FURTHER
SUPPORD OF HER MOTION TO COMPEL**

Wexford's Response would have this Court believe that Plaintiff's requests for *Lippert* documents are somehow beyond the pale. Not so. Kevin Curtis died at Menard under Wexford's care. And Plaintiff alleges that Wexford's unconstitutional medical practices—practices pointed out to Wexford by court-appointed medical experts—played a central role in Mr. Curtis's death. Yet Wexford refuses to produce documents and communications from *Lippert* that would shed light on these practices, as well as Wexford's response to the notice it received from the *Lippert* experts. What's more, Wexford continues to defend its decision to unilaterally redact and modify responsive documents. This improper approach contravenes fundamental principles of discovery.

Wexford's misrepresentations regarding the procedural posture of various discovery issues, its production of a few pages of requested documents only *after* Plaintiff filed her Motion to Compel (followed by an inaccurate report to the Court that "most of Plaintiff's objections are now moot"), as well as its ongoing refusal to comply with its basic discovery obligations, amount to exceptional circumstances warranting this Reply.

I.      **The *Lippert* Documents at Issue Are Plainly Discoverable.**

As explained in her Motion, Plaintiff has sought documents and communications in Wexford's possession that reflect its investigation of and response to findings by court-appointed medical experts about practices in prisons like Menard that put patients at risk. Those practices are central to Plaintiff's *Monell* claim that Wexford caused Mr. Curtis's death by maintaining practices that deprived him access to life-saving emergency medical treatment.[1] And there can be little dispute that discovery into what, if anything, Wexford did after being notified of the experts' findings about its practices directly bears on the question of Wexford's deliberate indifference.

Plaintiff bears a heavy burden to prove her *Monell* claim. For that reason, courts resolving discovery disputes in actions involving *Monell* claims "routinely recognize[] that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights." *Outley v. City of Chicago*, 2021 WL 4789026, at *4 (N.D. Ill. Jan. 5, 2021). Thus, Wexford's argument that Plaintiff's requests for *Lippert* discovery are beyond the scope of this case is without merit.

Wexford contends that Plaintiff's requests for *Lippert* discovery are insufficiently particularized because her requests do not contain the term "Lippert." But Federal Rule 34's "reasonable particularity" requirement takes an "expansive approach" to the breadth of what information is discoverable. *Pistolis v. Ameren*, 2022 WL 2159291, at *6 (S.D. Ill. June 15, 2022). Here, the *Lippert* discovery at issue is plainly encompassed by Plaintiff's document requests. *See* Dkt. 106-5 at 10, 12 (Requests for Production 30, 38–39). In fact, Plaintiff's narrower discovery requests ensure Wexford is only obligated to turn over *Lippert* documents that relate to this case.

---

[1] Wexford asserts that Plaintiff died of intoxication with an unknown substance. But that cause of death is hotly disputed in this case and will be an important focus of expert discovery.

Wexford's alternative arguments—that Plaintiff's Motion is untimely or that her objections should be deemed waived—fare no better. Wexford points to no deadline Plaintiff missed that makes her Motion untimely; to the contrary, discovery does not close until April 23, 2023. And tellingly, Wexford cites no authority to support any waiver.

As Wexford acknowledges, Plaintiff and Wexford have engaged in repeated Rule 37 conferences and have discussed the responsiveness of *Lippert* materials to oral and written discovery served throughout the case. During these conferences, Wexford has refused to engage in any discussion regarding the temporal or topical scope of *Lippert* production, and instead contends such information and documents are categorically exempt from discovery, even though, for the reasons explained, such documents and information are clearly calculated to lead to admissible evidence on Plaintiff's *Monell* claim. Indeed, Plaintiff recently served Wexford with a Rule 30(b)(6) deposition notice, which includes the 2014 *Lippert* Report's effect on Wexford's policies and practices as a topic. Ex. A at 3. And Wexford has acknowledged that its willingness to select a designee turns on how the Court resolves this Motion. *See* Ex. B at 1. So despite Wexford's claim to the contrary, it has acknowledged that *Lippert* discovery remains a live issue.[2]

Wexford also reasserts its objection that producing *Lippert* discovery would be too burdensome. In support, counsel claims that a review of several gigabytes of documents and communications yielded just 16 responsive documents. This assertion is unsupported. Indeed, Wexford has repeatedly construed most of its production as unresponsive to Plaintiff's requests (suggesting that its production was a gift), even when that assertion is belied by the documents.[3]

---

[2] Wexford also complains that discovery into the 2018 *Lippert* Report is improper because it was "issued after Mr. Curtis' death." Dkt. 110 at 9. But on information and belief, the Report was provided to Wexford and the parties prior to Mr. Curtis's death in September 2018.

[3] For example, Wexford reports that a communication by one of its employees about press reports regarding Mr. Curtis's death was "wholly irrelevant and unresponsive to Plaintiff's requests." Dkt. 110 at 16 n.7. Not so. *See, e.g.,* Dkt. 106-7.

3

Wexford's position here suggests that there are almost certainly other responsive and discoverable documents within this trove.

In the end, Wexford asks this Court to credit its position based on unsupported assertions of burden that Wexford has refused to discuss with Plaintiff. Yet as Plaintiff's Motion explains, Wexford's unwillingness to engage in any conversations regarding the scope of Plaintiff's requests vaporizes its burden objection. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011). Further, the Court should not accept Wexford's say-so that its search for *Lippert* documents would overwhelmingly generate privileged material. Even if that were correct, Wexford should not be relieved of its discovery obligation to produce nonprivileged responsive documents along with a privilege log, or at minimum, to discuss with Plaintiff's counsel ways to identify unprivileged responsive documents and communications. Instead, Wexford simply complains that because some documents may be privileged, it need not make any effort to search them. If Wexford's woeful record maintenance—and its inability or unwillingness to search its records more effectively—is the problem, that is one of Wexford's "own creation, and it must bear the consequences of a system it has chosen." *Miller UK Ltd. v. Caterpillar, Inc.*, No. 10 C 3770, 2013 WL 474380, at *6 (N.D. Ill. Feb. 7, 2013).

In sum, the *Lippert* discovery Plaintiff seeks goes to the heart of her claim against Wexford, and its arguments to the contrary are unavailing. The Court should compel that discovery.

**II.   Wexford's Redactions and Document Modifications Are Inappropriate.**

Repeatedly in this case, Wexford has pressed discovery discussions to the hilt, forced Plaintiff to move to compel, only to reverse course after Plaintiff's motions were filed, wasting the Court's and the parties' time. Indeed, after Plaintiff filed this Motion, Wexford conceded many of its redactions lacked merit and produced a partially unredacted version of what was Exhibit 9 to

4

Plaintiff's Motion. That now leaves a lack of clarity about which documents remain at issue. To clarify, Plaintiff has attached to this Reply the redacted documents that remain disputed from what was previously designated Exhibit 9. *See* Ex. C. And to be sure, Exhibit 10 remains fully in dispute.

Wexford claims that its redaction and document-modification practices are appropriate. First, with respect to the cut-and-paste cells in Exhibit 10 to Plaintiff's Motion, Wexford contends that it has free reign to redact information about other prisoners. *See* Dkt. 106-11. But as Plaintiff's Motion explained, "the practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure." *IDC Fin. Publ'g, Inc. v. Bonddesk Grp., LLC*, 2017 WL 4863202, at *2–3 (E.D. Wis. Oct. 26, 2017). That principle carries particular weight in this case, where Plaintiff must prove Wexford's deliberate indifference to *systemic* failures, and the documents at issue are not redacted but rather *created* by counsel.

Next, Wexford complains that Plaintiff's characterization that it redacts individual words, letters, or characters is "patently false." Dkt. 110 at 14. It isn't. Exhibit C shows redactions big and small throughout the documents. In one notable instance, an email is almost entirely redacted with only a tiny sliver unredacted. That is not how discovery works. Rule 34 concerns the discovery of "documents." Even "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information."[4] *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011).

For the reasons in this Reply and Motion, Plaintiff's Motion to Compel should be granted.

---

[4] Wexford attempts to support its redaction practices by referencing the Protective Order in this case, which permits a party to redact if it is appropriate. That circular argument does not support Wexford's position. To the contrary, the very existence of a protective order in this case "ensures the confidentiality of sensitive information," undercutting Wexford's insistence that its redactions are required or appropriate. *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002).

December 16, 2022                                          Respectfully submitted,

                                                         /s/ David Schmutzer
                                                         David Schmutzer
                                                         Attorney for Plaintiff

Sarah Grady
Howard Kaplan
David Schmutzer
KAPLAN & GRADY LLC
1953 N. Clybourn Ave., Ste. 274
Chicago, IL 60614
(312) 852-2184
sarah@kaplangrady.com
howard@kaplangrady.com
david@kaplangrady.com

## CERTIFICATE OF SERVICE

      I, David Schmutzer, an attorney, certify that on December 16, 2022, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

      /s/ David Schmutzer
      David Schmutzer
      Attorney for Plaintiff