047410/19344/TPD/JAK/NJC

U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

| | |
|---|---|
| YOLANDA JACKSON, as Administrator of the Estate of KEVIN CURTIS, #Y22898,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., EVA LEVEN, MOHAMMED SIDDIQUI, GAIL WALLS, NICKOLAS MITCHELL, CHARLES FRERKING, JEREMY FRERICH, and ANDREW BENNETT,<br><br>Defendants. | No. 3:20-cv-00900-DWD<br><br>Judge David W. Dugan |

## MOTION TO RECONVENE THE DEPOSITION OF DR. HERRINGTON

COME NOW Defendants WEXFORD HEALTH SOURCES, INC., DR. EVA LEVEN, and DR. MOHAMMED SIDDIQUI, by and through their attorneys, CASSIDAY SCHADE LLP, and for their Motion to Reconvene the Deposition of Dr. Herrington at Plaintiff's expense, state as follows:

1.      Plaintiff identified Dr. Herrington as an expert in this matter. Dr. Herrington, a preventative medicine doctor, not only reviewed the medical records for decedent, but also reviewed the medical records of 11 other prisoners: two of which are the subject of other litigation brought by Plaintiff's counsel and seven of which Dr. Herrington believes were patients identified in the 2014 or 2018 *Lippert* monitors' reports. These patients were not all from the same facility, did not have the same condition, and their deaths spanned approximately 7 years. During this time, approximately 650 patients died in the IDOC (with an average total population over 40,000 yearly). Naturally, Defendants inquired how the 11 other patients were selected for review, in other words what sampling methodology Dr. Herrington utilized for his purported systemwide

review. Dr. Herrington testified he did not select these patients, did not select the number of patients to review, and does not know how they were selected. (Exhibit A, Portion of Dr. Herrington's First Deposition, p. 403-415).

2. Dr. Herrington subsequently provided a rebuttal report where he continued to give opinions about the *Lippert* monitors' reports. During his second deposition, on November 7, 2023, counsel for Defendants asked Dr. Herrington, given 600+ prisoners died during the time frame at issue, how he decided to cross-reference the 11 patients' records he received from Plaintiff's counsel with the patients in the *Lippert* reports. Counsel for Plaintiff objected that the answer was privileged pursuant to Federal Rule of Civil Procedure 26(b)(4)(C), directed Dr. Herrington not to answer, and Dr. Herrington refused to answer based on this advice.

> Q. Were you asked to assume it to be true that the patients that you reviewed were, in fact, patients that were identified in the Lippert report?
> MS. GRADY: Objection; misstates his report. I'll also object to the scope. Again, we're going back to the things that counsel had more than twelve hours' opportunity to depose Dr. Herrington about concerning his original report.
> (To the witness) You can go ahead, Doctor.
>  (To counsel) And I'll ask that we please keep this tied to the rebuttal report, given the substantial additional time that's already been provided for counsel to depose Dr. Herrington on the first one.
> Q. (Ms. Kinkade[1] continuing) I'm on page 6. Do you need me to repeat the question or have you still got it?
> A.  No; I think I still have it. So I didn't have, like, Social Security numbers or patient I.D. numbers to cross-reference; but when I saw, like, almost exact clinical information, like this patient fell in the bathroom on this day and the age was the same, that was enough for me to conclude on a more-likely-than-not basis that it was the same patient.
> Q. How did you know to even look to cross-reference?
> A. I just --
> MS. GRADY: (To the witness) Hold on, Doctor. I'm going to object because I think that calls for potential communications between counsel and Dr. Herrington that is expressly protected from disclosure by Rule 26(b).
> (To the witness) I'm going to advise you not to answer, Dr. Herrington.
> Q. (Ms. Kinkade continuing) Are you taking her advice?
> A. Yes.
> …
> MS. KINKADE: (To the reporter) Can you read it one more time for us.

---

[1] The rough transcript has counsel's name spelled incorrectly so it was corrected here.

(The record was read, as follows: "QUESTION: So it sounds like you're refusing to tell me how it was that you decided to cross-reference the cases that you reviewed with the cases laid out in the Lippert report.")

MS. GRADY: Objection; misstates the testimony.

(To the witness) Go ahead, Doctor.

A. So if I'm understanding the question, it's how is it that I decided to cross-reference patients in this case-series review I did in Curtis and Lippert.

MS. GRADY: (To the witness) Hold on, Doctor. That's actually not the question, and that matters because the answer to that question is protected. She's asking you whether you're refusing to testify about how you decided.

A. I guess I just don't understand the question. I'm not refusing to testify. It's just that Lippert -- you know, as an expert I want to use as much documentation as I have access to to generate opinions, and Lippert was available and then these twelve cases were available, and so it made sense to me to see if there was information in Lippert that I could review to potentially assist me in opinion formulation.

Q. (Ms. Kinkade continuing) Do you understand that there were over 600 deaths in the Department of Corrections during the time frame at issue?

MS. GRADY: Objection; vague as to time frame.

A. Yes.

Q. (Ms. Kinkade continuing) And did you decide to cross-reference the cases you reviewed with the Lippert report as part of your methodology? Was that your choice?

MS. GRADY: I'm going to object and instruct the witness not to answer. I think as phrased it calls for things around creation of draft reports that are protected from disclosure by 26(b)(4).

Q. (Ms. Kinkade continuing) Are you taking the advice of counsel?

A. Yes.

Q. And you're refusing to answer that question based on the advice?

A. Yes.

Q. Were you informed by counsel to cross-reference specifications in the Lippert report with the cases that you reviewed in this case?

MS. GRADY: Same objection and same advice.

(To the witness) Dr. Herrington, that calls expressly for communications this time that are protected from disclosure by Rule 26(b)(4) because they do not relate to any of the exceptions set forth in that rule.

Q. (Ms. Kinkade continuing) Are you taking the advice?

A. Yes.

Q. And you're refusing to answer based on the advice?

A. Yes.

MS. KINKADE: Madame Court Reporter, can you please certify this portion of the transcript.

(Exhibit B, Portion of the Rough Transcript of Dr. Herrington's Deposition on November 7, 2023, p. 92-99).

3. Defense counsel further inquired whether Dr. Herrington knew how the patients were selected and, again, Plaintiff's counsel raised privilege and advised Dr. Herrington not to answer:

> Q. (Ms. Kinkade continuing) So the eleven patients in addition to Mr. Curtis, those patients' names, were they provided to you by counsel?
> A. Yes.
> Q. Were you ever informed why those patients were selected?
> MS. GRADY: I'm going to object that that calls for discussions protected by Rule 26(b)(4).
> Q. (Ms. Kinkade continuing) Are you going to answer the question?
> A. I'm going to decline to answer that question.
> Q. Is that based on her advice?
> A. Yes.
> MS. KINKADE: (To the reporter) I would ask to certify that question for the same reasons.

(Ex. B, p. 123-124).

4. Given both that Dr. Herrington indicated he would end the deposition at or near the four-hour mark and as calls to chambers are strongly discouraged, Defendants certified the questions and continued with other questioning.

5. "A person may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." FRCP 30(c)(2)(emphasis added).

6. Federal Rule of Civil Procedure 26(b)(4)(C) provides that:

> Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>     (i) relate to compensation for the expert's study or testimony;
>     (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>     (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

7. The only logical conclusion from Plaintiff's objection is that Plaintiff's counsel communicated to Dr. Herrington 1) that he should cross-reference the 11 patients with the *Lippert*

reports and 2) how Plaintiff's counsel selected the 11 patients for Dr. Herrington's review. Defendants explained that if this were the case the communication would constitute facts and/or assumption about the identity of the patients and the methodology of the sampling.

8. Assumptions communicated by an attorney to an expert witness that were relied on by the expert witness in forming their opinion are discoverable. *Hood v. City of Chicago*, 2021 U.S. Dist. LEXIS 263257, *17, 2021 WL 12101162. If counsel provides information to its expert, they "may not be able to rely on privilege or work-product protections to avoid disclosing the substance of communications between counsel and the expert regarding the conveyance of that information." *Id.* at 14. "[T]hese topics [are] fair game because they were facts and data considered by the expert in coming to his opinion, rather than the substance of attorney-expert communication. *Id*.

9. Although Plaintiff's counsel asked a blanket question to Dr. Herrington whether he was provided any assumptions by counsel, this cannot suffice to protect all their communication, especially here where, based on Plaintiff's objection, it appears that counsel directed Dr. Herrington to cross-reference the records Plaintiff's counsel selected with the *Lippert* reports in coming to his opinions that the patients were one and the same. As such, Dr. Herrington's answers to the posed questions are not privileged as it is an assumption discoverable under Rule 26(b)(4)(C).

10. Furthermore, if "an expert does not independently verify information from counsel and simply adopts data, methodology, or tests furnished to the expert by the attorneys," "this could lead to an effective cross-examination of the expert's opinion and methodologies." *Id.* (citing *Fid. Nat. Title Ins. Co. v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 750 (7th Cir. 2005) ("[C]ounsel

should be afforded an opportunity to conduct expert discovery in an effort to appropriately cross-examine an expert.")).

11. Because counsel performed the sampling methodology instead of Dr. Herrington (selected the cases to be reviewed from over 650 death and across a 40,000 population) and Dr. Herrington adopted the methodology without independently verifying that the sampling was performed scientifically or reliably, counsel's communications about the sampling are not privileged, nor should they be.

12. The parties agree that biased sampling may lead to unreliable results. (Ex. A). However, Defendants are precluded from inquiring into the methodology used as Dr. Herrington did not do it and Plaintiff's counsel has improperly advised Dr. Herrington not to disclose any information he was given about how the patients were selected. Defendants are entitled to this information as it is the methodology underlying Plaintiff's expert's opinions. On a break, Defendants asked Plaintiff's counsel to explain the methodology used for sampling and she would not.[2] [3]

13. There can be no doubt that if Plaintiff's counsel sampled the cases for Dr. Herrington's review solely or largely from ongoing litigation the sample is biased and cannot be a reliable cross-section of the population in order to opine on systemwide practices. While Defendants believe that sufficient evidence has been elicited that Dr. Herrington performed no

---

[2] MS. KINKAIDE: Just tell me how you selected the twelve patients that you reviewed.
MS. GRADY: It's not my deposition today. I'm just asking you what court order? You've accussed (sic) me of violating a court order.
MS. KINKAIDE: The only person I can ask how they were selected and how he came to cross-reference them is him but, and you're saying I can't because you told him, but then you won't tell me. I just want to know. We're entitled to know. (Ex. B, p. 120-121).
[3] Defendants have concerns that by performing methodology for the expert and withholding how the methodology was performed the only remaining way to obtain this information is to identify counsel as a witness and subpoena a deposition. However, before taking these unusual steps, Defendants are attempting to obtain additional information from Dr. Herrington concerning the communication about the selection of the 11 other patients and his knowledge related thereto in the least burdensome manner for all parties.

methodology in support of his review of systems and his failure to verify that the sample was unbiased led to a sample of only patients who were the subject of litigation, evidence that Dr. Herrington *knew* these cases were selected from litigation is direct evidence that Dr. Herrington's assessment was intentionally biased and patently unreliable and, should he not be barred from testifying in this matter, the jury must be presented with such information in order to weigh his credibility.

14. Ultimately, there is no justifiable reason to withhold this material information from Defendants and Plaintiff's objections to privilege should be overruled.

15. For the above reasons, Defendants respectfully request the Court order Plaintiff to represent Dr. Herrington for his deposition for the sole purpose of answering questions related to the issues set out in this motion.

16. Discovery closes on November 10, 2023. Because of the impending discovery deadline, should Defendants' Motion be granted, Defendants request leave to depose Dr. Herrington, in accordance with this motion, outside of the discovery deadline, but do not seek any further extension of discovery at this time. Furthermore, given the time restraints (including the forthcoming deadline for summary judgment and *Daubert* motions where these issues will be addressed), and the unique nature of this motion, Defendants are presenting this issue to the Court in good faith without a joint report.

17. Because Defendants already attempted to inquire with Dr. Herrington, and paid for such time and expenses, Defendants will incur unnecessary costs and expenses to reconvene the deposition of Dr. Herrington to ask the same questions again, including, but not limited to, duplicative court reporter fees and additional fees of Dr. Herrington. Defendants request the Court order these costs be borne by counsel for Plaintiff.

WHEREFORE, for the above reasons, Defendants WEXFORD HEALTH SOURCES, INC., DR. EVA LEVEN, and DR. MOHAMMED SIDDIQUI, respectfully request this Honorable Court grant Defendants' Motion to Reconvene the Deposition of Dr. Herrington at Plaintiff's expense or such further relief deemed appropriate.

        CASSIDAY SCHADE LLP

        By: /s/ Jaclyn A. Kinkade
        Attorneys for Defendants WEXFORD
        HEALTH SOURCES, INC., DR. EVA
        LEVEN and DR. MOHAMMED SIDDIQUI

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following attorneys of record and pro se parties by depositing the same in the U.S. mail in St. Louis, Missouri, with proper postage prepaid, before the hour of 5:00 p.m., on November 10, 2023. Under penalties as provided by law, I certify that the statements set forth herein are true and correct:

Howard Kaplan, Esq.
Sarah Copeland Grady, Esq.
David Schmutzer, Esq.
Kaplan & Grady, LLC
1953 N. Clybourn Ave., Suite 274
Chicago, IL 60614
howard@kaplangrady.com
sarah@kaplangrady.com
david@kaplangrady.com
brodwolf@kaplangrady.com

ATTORNEYS FOR Co-DEFENDANTS
R. Brandon Shultz
Jeanine Armstrong
Victoria Fuller
Assistant Attorney General
Metro East Office
201 West Pointe Drive, Suite 7
Swansea, IL 62226
618-236-8781
618-236-8620 (fax)
robert.shultz@ilag.gov
jeanine.armstrong@ilag.gov
victoria.fuller@ilag.gov

/s/ Jaclyn A. Kinkade