IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| YOLANDA JACKSON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | )   Case No. 3:20-cv-900-DWD |
| EVA LEVEN, MOHAMMED | ) |
| SIDDIQUI, GAIL WALLS, | ) |
| NICKOLAS MITCHELL, CHARLIE | ) |
| FRERKING, JEREMY FRERICH, and | ) |
| ANDREW BENNETT, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is the Motion to Reconvene the Deposition of Dr. Ryan Herrington ("Motion") (Doc. 168) of Defendants, Wexford Health Sources, Inc., Dr. Eva Leven, and Dr. Mohammed Siddiqui. Plaintiff filed a Response in Opposition to the Motion ("Response") (Doc. 179) and Defendants filed a Reply in Support of the Motion ("Reply") (Doc. 185). For the reasons explained below, the Motion is **GRANTED**.

Decedent, Kevin Curtis, died while incarcerated at Menard Correctional Center. (Doc. 1, ¶ 1). Shortly before his death, Decedent allegedly received inadequate medical care from Defendants after he fell into a catatonic and unresponsive state. (Doc. 1, ¶¶ 26-30). Plaintiff, as the mother and administrator of Decedent's estate, filed a 6-count Complaint against Defendants. (Doc. 1, generally). Specifically, Plaintiff alleged deliberate indifference by all Defendants under the Eighth Amendment and 28 U.S.C.

1

§ 1983 (Count I), a conspiracy by all Defendants under § 1983 (Count II), a failure to intervene by all Defendants under the Eighth Amendment and § 1983 (Count III), a wrongful death action against all Defendants under 740 ILCS 180/1 (Count IV), a survival action against all Defendants under 755 ILCS 5/27-6 (Count V), and *respondeat superior* liability against Defendant Wexford (Count VI). (Doc. 1, generally).[1] Plaintiff alleged, "there exist policies and/or widespread practices in IDOC pursuant to which prisoners receive unconstitutionally inadequate healthcare." (Doc. 1, ¶¶ 55-61, 68, 73). Currently, discovery is due on December 18, 2023, and dispositive motions are due on January 12, 2024. (Doc. 176).[2] The case is set for a jury trial on May 20, 2024. (Doc. 176).

In the instant Motion, Defendants note Dr. Herrington, "a preventative medicine doctor," reviewed the medial records of Decedent and 11 other prisoners. (Doc. 168, pg. 1). Defendants indicate 2 of the 11 other prisoners are the subject of other litigation filed by Plaintiff's attorney, and 7 of the 11 other prisoners are believed by Dr. Herrington to be patients identified in the 2014 or 2018 *Lippert* reports.[3] (Doc. 168, pg. 1). Defendants suggest "these patients were not all from the same facility, did not have the same condition, and their deaths spanned approximately 7 years." (Doc. 168, pg. 1).

Since "approximately 650 patients died in the IDOC" during the relevant timeframe, Defendants state they "[n]aturally…inquired how the 11 other patients were selected for review." (Doc. 168, pg. 1). That is, Defendants sought the "sampling

---

[1] Count VI was subsequently dismissed. (Doc. 61).
[2] If the Motion is granted, Defendants seek leave to re-depose Dr. Herrington outside the discovery deadline. (Doc. 168, pg. 7). However, they do not seek any other extension of discovery. (Doc. 168, pg. 7).
[3] The *Lippert* reports were written in a class-action lawsuit alleging inadequate medical care within the IDOC. *See Lippert v. Godinez et al.*, No. 10-cv-4603 (N.D. Ill.).

2

methodology Dr. Herrington utilized for his purported systemwide review." (Doc. 168, pgs. 1-2). Dr. Herrington allegedly stated he did not select the patients for review, did not select the number of patients to review, and did not know how the patients were selected for review. (Doc. 168, pg. 2). Defendants' attorney also inquired as to, *inter alia*:

1. "How did you know to even look to cross-reference?"

2. "[D]id you decide to cross reference the cases you reviewed with the Lippert report as part of your methodology? Was that your choice?"

3. "Were you informed by counsel to cross-reference specifications in the Lippert report with the cases that you reviewed in this case?"

(Docs. 168, pgs. 2-3; 179, pg. 3; 185, pgs. 1-2).[4]

In response to these questions, Plaintiff's attorney objected under Federal Rule of Civil Procedure 26(b)(4)(C) and instructed Dr. Herrington not to answer. In light of those objections, Defendants' attorney concludes Plaintiff's attorney must have communicated to Dr. Herrington (1) that he should cross-reference the 11 other patients with the *Lippert* reports, and (2) how the 11 patients for Dr. Herrington's review were selected. (Doc. 168, pgs. 4-5). However, in Defendants' view, such communications, constituting facts or assumptions about the identity of the 11 patients and the methodology for sampling, are excepted from protection under Rule 26(b)(4)(C). (Doc. 168, pg. 5). In other words, since "counsel performed the sampling methodology instead of Dr. Herrington (selected the cases to be reviewed from over 650 death[s]…across a 40,000 population) and Dr.

---

[4]Defendants' attorney also asked, "[w]ere you ever informed why those patients were selected?" (Docs. 168, pg. 4; 179, pg. 3). After the filing of the Motion, the parties held a discovery dispute conference, resulting in a declaration answering that question. (Docs. 179, pg. 3; 185, pg. 1). As such, Defendants indicate the above-listed questions, and related follow up questions, remain at issue. (Doc. 185, pgs. 1-2).

3

Herrington adopted the methodology without independently verifying that the sampling was performed scientifically or reliably," Defendants argue Plaintiff's attorney's "communications about the sampling are not privileged." (Doc. 168, pg. 6).

Due to Plaintiff's attorney's objections and instructions not to answer, however, Defendants argue they "[we]re precluded from inquiring into the methodology" underlying her expert's opinions, which could be biased or based upon a cross-section of the population that unreliably indicates systemwide practices. (Doc. 168, pg. 6). As such, Defendants seek an order for Plaintiff to present Dr. Herrington for another deposition, at her expense, to answer questions related to the these issues. (Doc. 168, pg. 7).

In her Response, Plaintiff argues Dr. Herrington sat for two depositions, totaling 12 hours, in relation to his initial expert report, at which time Defendants allegedly questioned him about the "conclusion that specific patients whose records he reviewed were the same patients discussed by the *Lippert* experts in their reports." (Doc. 179, pg. 2). Thereafter, Dr. Herrington submitted a rebuttal report, which Plaintiff indicates "did not discuss the patient overlap." (Doc. 179, pg. 2). It was at Dr. Herrington's third deposition, which was held at the request of Defendants due to his rebuttal report, that the instant issues arose. (Doc. 179, pgs. 2-3). Plaintiff suggests the third deposition was meant to be limited to the rebuttal report, yet Defendants' attorney "repeatedly asked questions that went solely to Dr. Herrington's initial expert report—questions counsel could have, but did not, ask at his first two depositions." (Doc. 179, pg. 3). As such, Plaintiff's attorney notes, aside from her objections under Rule 26(b)(4), she objected to the scope of Defendants' attorney's questioning at the deposition. (Doc. 179, pgs. 3, 9-10).

4

With respect to the first question recounted above, Plaintiff argues Dr. Herrington provided an answer, albeit over Plaintiff's attorney's objection. (Doc. 179, pgs. 3-4). Plaintiff notes Dr. Herrington stated as follows:

> I guess I just don't understand the question. I'm not refusing to testify. It's just that Lippert—you know, as an expert I want to use as much documentation as I have access to generate opinions, and Lippert was available and then these twelve cases were available, and so it made sense to me to see if there was information in Lippert that I could review to potentially assist me in opinion formulation.

(Docs. 168-2, pg. 8; 179, pg. 4).

Further, Plaintiff notes, in response to the question of whether Dr. Herrington was "asked to assume it to be true that the patients that you reviewed were, in fact, patients that were identified in the Lippert report," Dr. Herrington answered as follows:

> So I didn't have, like, Social Security numbers or patient I.D. numbers to cross reference; but when I saw, like, almost exact clinical information, like this patient fell in the bathroom on this day and the age was the same, that was enough for me to conclude on a more-likely-than-not basis that it was the same patient.

(Docs. 168-2, pg. 4; 179, pg. 4).

When Plaintiff's attorney questioned Dr. Herrington about whether he was asked to make any assumptions in this case, Dr. Herrington allegedly answered, "no." (Docs. 168, pg. 5; 179, pg. 4 n. 2). Plaintiff argues, to the extent new information is sought from the questions at issue, "it can only be whether, during conversations between Dr. Herrington and Plaintiff's counsel, it was Plaintiff's counsel or Dr. Herrington who first raised the idea of referencing the *Lippert* reports in connection with Dr. Herrington's review of the twelve patient records, as laid out in his initial report." (Doc. 179, pg. 4).

5

Plaintiff emphasizes that the relevant facts and data are the medical files for the 12 patients and the *Lippert* reports, all of which has been disclosed to Defendants. (Doc. 179, pg. 7). In Plaintiff's view, the questions of how and why Dr. Herrington cross-referenced the facts and data "speak[] only to the expert's and counsel's efforts to gather, organize, and present" the facts and data. (Doc. 179, pg. 7). Further, the answers to the questions at issue would not reveal any assumptions by Dr. Herrington, as he "expressly testified on multiple occasions that he did not assume that the patients whose records he reviewed were the same patients discussed by the *Lippert* reports." (Doc. 179, pg. 7). Even if the Court disagrees, though, Plaintiff argues re-deposing Dr. Herrington is unnecessary, as he could respond to the two questions at issue via declaration. (Doc. 179, pg. 9 n. 4).

In their Reply, Defendants emphasize, *inter alia*, the above-stated questions, and related follow up questions, remain at issue and are appropriate under Rule 26(b)(4)(C). (Doc. 185, pg. 1). Also, with respect to her argument as to the scope of the deposition, Defendants claim Plaintiff provided no case law for the proposition that an expert witness may decline to answer questions that fall outside the scope of a rebuttal report. (Doc. 185, pg. 2). Nevertheless, Defendants argue Dr. Herrington's rebuttal report does respond to criticisms regarding his lack of methodology when creating the pool of patients for review. (Doc. 185, pg. 2). Therefore, Defendants argue questions relating to the methodology used in sampling the patient pool, whether the methodology was biased, and whether Dr. Herrington knew or should have known about that bias is "fundamental to whether he should be allowed to provide any opinions in this case." (Doc. 185, pgs. 2-3) (Emphasis in original omitted). Finally, Defendants argue the reason Dr. Herrington

6

cross-referenced the 11 other patients with those in *Lippert*, which has not adequately been answered, speaks to his knowledge about the methodology used to select the 11 other patients and the facts or assumptions leading to Dr. Herrington's opinion that certain patients were the same as those referenced in *Lippert*. (Doc. 185, pgs. 3, 5).

> Now, Rule 26(b)(4)(C) provides:
>
> Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> > (i) relate to compensation for the expert's study or testimony;
> >
> > (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
> >
> > (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C); *see also Medicines Co. v. Mylan Inc.*, No. 11-cv-1285, 2013 WL 2926944, *4 (N.D. Ill. June 13, 2013) (summarizing the Rule by stating, "[c]ommunications that relate to expert compensation or identify facts, data[,] or assumptions that the party's attorney provided, and that the expert considered and relied upon in forming the opinions to be expressed, are not precluded from discovery"); *Hood v. City of Chicago*, Nos. 16-cv-1970 & 16-cv-1893, 2021 WL 12101162, *4 (N.D. Ill. March 30, 2021) (recognizing, under the Advisory Committee notes to the 2010 Amendment, "even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics").

The Advisory Committee notes to the 2010 Amendment instruct that Rule 26(b)(4)(C) "provide[s] work-product protection for attorney-expert communications regardless of the form of the communications." Fed. R. Civ. P. 26, Advisory Committee notes (2010). It is "designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." *Id*. Rule 26(b)(4)(C) "do[es] not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions." *Id*. Also, counsel may question alternative analyses, testing methods, or approaches to the issues, even if those things were not considered by the expert when forming the opinions. *Id.*; *see also Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) (stating, as to Rule 26(a)(2)(B), "[a] testifying expert must disclose…whatever materials are given him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination").

Further, the exception in Rule 26(b)(4)(C)(ii) "applies only to communications 'identifying' the facts or data provided by counsel." Fed. R. Civ. P. 26, Advisory Committee notes (2010); *see also Allstate Ins. Co. v. Electrolux Home Products*, Inc., 840 F. Supp. 2d 1072, 1078 (N.D. Ill. 2012) (noting, with Rule 26(a)(2) and the 2010 Amendment, "[t]he committee urged that the phrase 'facts or data' was to be interpreted broadly and include any facts or data considered by the expert, not only those relied upon"); *Karn v. Ingersoll-Rand Co.*, 168 F.R.D. 633, 635 (N.D. Ind. 1996) (stating, under Rule 26(a)(2), " '[c]onsidered,' which simply means 'to take into account,' clearly invokes a broader

8

spectrum of thought than the phrase 'relied upon,' which requires dependence on the information."). Communications about the relevance of the facts or data, however, remain protected under the Rule. Fed. R. Civ. P. 26, Advisory Committee notes (2010).

As to Rule 26(b)(4)(C)(iii), the exception covers a situation where, *e.g.*, "the party's attorney may tell the expert to assume the truth of certain testimony or evidence, or the correctness of another expert's conclusions." *Id*. The exception is limited to assumptions actually relied upon. *Id*. Discussions about hypotheticals, or exploring the possibilities of hypothetical facts, are not covered. *Id*.; *see also Hood*, 2021 WL 12101162, *4 (stating, under this exception, the notes explain "the term 'facts or data' is generally to be interpreted narrowly but should still 'be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients' ").

Notably, in *Hood*, much like in the present case, the defendants sought to discover information regarding, *inter alia*, an expert's analysis of samples of certain sets of documents, including whether he decided what data to include and, if not, who decided what data to include and how. *See Hood*, 2021 WL 12101162, *4. The Court in that case observed as follows: "If a party's counsel provides information to an expert, that party may not be able to rely on privilege or work-product protections to avoid disclosing the substance of communications between counsel and the expert regarding the conveyance of that information." *Id*. In light of Rule 26(b)(4), the Court continued, "the[] topics [a]re fair game because they were facts and data considered by the expert in coming to his opinion, rather than the substance of attorney-expert communications." *Id*.

9

Importantly, the Court in *Hood* recognized an expert's decisions when adopting a final report may provide "fodder" for challenging the expert. *See id*. For example, when an expert chooses not to independently verify information from counsel but, instead, "simply adopts data, methodology, or tests furnished to the expert by the attorneys," that could "lead to an effective cross-examination of the expert's opinion and methodologies." *See id*. It was clarified, though, that "there is a distinction between communication which occurs upon the handing over of data from attorney to expert and the resultant output of that data." *See id*. at *5; *see also Davita Healthcare Partners, Inc. v. U.S.*, 128 Fed. Cl. 584, 591 (Fed. Cl. 2016) (explaining "interpretations of data," reflecting mental impressions and resulting from "collaborative efforts [of counsel and the expert] to organize, marshal, and present data," are "separate and distinct from the underlying facts and data themselves").

Ultimately, the Court in *Hood* concluded "the purpose of the 2010 amendments to Rule 26(b)(4) is served by allowing some exploration as to whether the exceptions to the attorney-expert work product privilege come into play." *See Hood*, 2021 WL 12101162, *5. It found the defendants questions, as they related to facts, data, and assumptions relied upon by the expert and as circumscribed by the Court, were not protected from disclosure under Rule 26(b)(4)(C). *See id*. In doing so, the Court in *Hood* rejected the plaintiffs' "bald assertion" that the answer to a question, *i.e.*, whether the expert prepared a summary, was protected by the work-product privilege, as that assertion was "premature and not protected." *See id*. Depending on the expert's answer, it was possible no privilege existed or was implicated, such that "the defense may delve into communication between counsel and expert only on facts, data, and assumptions the expert relied upon, all of

10

which fall within the exception to the prohibition under Rule 26(b)(4)(C)." *Id*. In response to the plaintiffs' concerns, though, which had some merit, the *Hood* Court reiterated:

> Generally, Defendants may inquire of the expert why the expert chose to include or exclude data or analysis. Specifically, as requested in this motion, the Defendants may inquire as to facts and data received by the expert from counsel and the communication surrounding the conveyance of the facts or data the attorney provides and that the testifying expert considered in forming an opinion. The advisory committee notes provide that this exception only applies to communications that identify "facts or data." Any communication between attorney and expert discussing the potential relevance of the facts or data is privileged and shall not be discoverable.
>
> Furthermore, "assumptions" the attorney's communication provided and that were relied on by the testifying expert in forming an opinion are discoverable. As stated by the advisory committee note, counsel's conveying that the expert should assume the truth of certain evidence, and then i[f] such information was relied upon by the expert, is within the work product exception.

*Id*.

Here, based on the above-discussed authorities, the Court agrees with Defendants that the protections of Rule 26(b)(4)(C) are not necessarily implicated to protect the answers to the questions at issue or certain follow up questions. In particular, the Court agrees that "some exploration" into the methodology for selecting and sampling patients in Dr. Herrington's review is appropriate in light of Rule 26(b)(4)(C)(ii) and (iii), especially where, as Defendants argue, the selected patients were not from the same facility, did not have the same condition, had deaths spanning approximately 7 years, and represented 11 out of approximately 650 decedents in an IDOC population of 40,000 during the relevant timeframe. *See Hood*, 2021 WL 12101162, *4-5; (Doc. 168, pgs. 1, 6). It

seems obvious to the Court that the manner of selecting these patients would be essential to Dr. Herrington's systemwide review, as Defendants claim. (Doc. 168, pg. 1).

And, in light of Dr. Herrington's alleged testimony that he did not select the patients for review, did not select the number of patients to review, and did not know how the patients were selected for review, the Court cannot conclude communications between Plaintiff's counsel and Dr. Herrington are protected rather than excepted under Rule 26(b)(4)(C). (Doc. 168, pg. 2). As was the case in *Hood*, it appears to the Court that Plaintiff's attorney's objections to the questions specifically identified by the parties in relation to the instant Motion are "premature" and, at least at this juncture, "unprotected." *See Hood*, 2021 WL 12101162, *5. To be sure, Defendants' attorney's questioning may eventually delve into protected areas; however, at this point, the questions largely implicate "yes" or "no" answers by Dr. Herrington that will then decide whether the protections of Rule 26(b)(4)(C) are implicated at all or are implicated in a way that may still be subject to questioning under that Rule's exceptions. *See id*. Further, in response to Plaintiff's arguments that a re-deposition of Dr. Herrington is unnecessary because he could provide a declaration and certain of the questions at issue have been answered, the Court believes it is appropriate to allow follow-up by Defendants.

The Court emphasizes, even if Plaintiff's attorney communicated certain information to Dr. Herrington, as Defendants maintain, that does not automatically subject the communications to protection under Rule 26(b)(4)(C). *See Medicines Co.*, 2013 WL 2926944 at *4; *Hood*, 2021 WL 12101162, *5; (Doc. 168, pgs. 4-6). Defendants may inquire into communications *identifying* facts, data, or assumptions provided by

12

Plaintiff's attorney to Dr. Herrington, and it is in this regard that the Court finds *Hood* is instructive and the parties will benefit from becoming familiar with it. Fed. R. Civ. P. 26(b)(4)(C), Advisory Committee notes (2010); *Hood*, 2021 WL 12101162, *4-5. As noted above and by Defendants, Dr. Herrington's answers could indicate potential bias or an unreliable cross-section of the IDOC population that would obviously provide Defendants "fodder" for a cross-examination on the methodology for selecting and sampling the patients at issue. *See Hood*, 2021 WL 12101162, *4. It is notable that this seems to go beyond the mere "medical files" that Plaintiff asserts were disclosed to Defendants. (Doc. 179, pg. 7). On this record, the Court will not deny Defendants the opportunity to broach those subjects.

The Court is confident, based on the attorneys' vigorous representation of their clients to this point in the case, that Plaintiff's attorney will be able to identify and defend the line separating protected and unprotected information under Rule 26(b)(4)(C) during a re-deposition of Dr. Herrington. *See Hood*, 2021 WL 12101162, *5; *Davita Healthcare Partners, Inc.*, 128 Fed. Cl. at 591. Finally, in light of Defendants' argument that Dr. Herrington's rebuttal report responds to criticisms regarding a lack of methodology, the Court will not parse the language of that rebuttal report to speculate as to whether Defendants exceeded the proper scope of his prior deposition. (Doc. 185, pgs. 2-3). The parties are far better positioned to address such concerns and, in any event, a scope objection does not necessarily provide a basis not to answer, as Defendants argue.

For the reasons explained above, the Motion is **GRANTED**. At her expense and at the earliest possible date, Plaintiff is **DIRECTED** to present Dr. Herrington for another

13

deposition, which is to be held consistent with this Memorandum & Order. If the parties cannot stipulate to a length of time for the deposition, then it shall be limited to 1 hour.

**SO ORDERED.**

Dated: December 15, 2023.

_____
DAVID W. DUGAN
United States District Judge