IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| YOLANDA JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., EVA LEVEN, MOHAMMED SIDDIQUI, GAIL WALLS, NICKOLAS MITCHELL, CHARLIE FRERKING, JEREMY FRERICH, and ANDREW BENNETT, | ) Case No. 3:20-cv-900-DWD |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is the Motion for Reconsideration (Doc. 184) of Defendants, Wexford Health Sources, Inc., and Dr. Eva Leven, wherein they seek reconsideration of a certain issue resolved in the Memorandum & Order at Doc. 177. Plaintiff filed a Response in Opposition to that Motion (Doc. 189), and Defendants filed a Reply in Support of that Motion (Doc. 191). Also before the Court is Plaintiff's Motion to Enforce Discovery Order (Doc. 196), which is not yet ripe. As explained below, the Motion for Reconsideration is **DENIED** and the Motion to Enforce Discovery Order is **DENIED without prejudice**. The parties are **DIRECTED** to take the action detailed below. Also, in light of the rulings contained herein, the scheduling and discovery deadlines are *sua sponte* **RESET**.

Decedent, Kevin Curtis, died while incarcerated at Menard Correctional Center. (Doc. 1, ¶ 1). Shortly before his death, Decedent allegedly received inadequate medical

care from Defendants after he fell into a catatonic and unresponsive state. (Doc. 1, ¶¶ 26-30). Plaintiff, as the mother and administrator of Decedent's estate, filed a 6-count Complaint against Defendants. (Doc. 1, generally). Specifically, Plaintiff alleged deliberate indifference by all Defendants under the Eighth Amendment and 28 U.S.C. § 1983 (Count I), a conspiracy by all Defendants under § 1983 (Count II), a failure to intervene by all Defendants under the Eighth Amendment and § 1983 (Count III), a wrongful death action against all Defendants under 740 ILCS 180/1 (Count IV), a survival action against all Defendants under 755 ILCS 5/27-6 (Count V), and *respondeat superior* liability against Defendant Wexford (Count VI). (Doc. 1, generally).[1] Plaintiff alleged, "there exist policies and/or widespread practices in IDOC pursuant to which prisoners receive unconstitutionally inadequate healthcare." (Doc. 1, ¶¶ 55-61, 68, 73).

The discovery deadline lapsed, without a request for an extension of time by the parties, on December 18, 2023. (Doc. 176). Dispositive and *Daubert* motions are presently due on January 26, 2024. (Doc. 188). The case is currently set for a Final Pretrial Conference on June 13, 2024, and a Jury Trial on June 24, 2024. (Doc. 188).

On September 28, 2023, in keeping with the trend of requiring the Court's active participation in discovery, the parties submitted a 37-page Second Joint Written Discovery Report ("Second JWDR"). Defendants indicate they somehow believed the Second JWDR was submitted "in anticipation of Plaintiff filing a Motion to Compel." (Doc. 184, pg. 1). Consistent with the Court's Case Management Procedures, the Second

---

[1] Count VI was subsequently dismissed. (Doc. 61).

2

JWDR detailed the date, duration, and medium used for a discovery conference, which failed to resolve all of the parties' discovery disputes. (Second JWDR, pgs. 1-2; Case Management Procedures of Judge David W. Dugan ("CMPs"), "Discovery Disputes," Subsection B, *Procedure for Submitting Unresolved Discovery Disputes to the Court*, pg. 3, https://www.ilsd.uscourts.gov/documents/Dugan.pdf). Therefore, the Second JWDR also identified and described (1) all discovery areas or issues discussed by the parties during the discovery conference, (2) the discovery areas or issues resolved, and (3) the specific discovery or issues not resolved or still in dispute. (CMPs, "Discovery Disputes," Subsection B, *Procedure for Submitting Unresolved Discovery Disputes to the Court*, pg. 3). For the unresolved or still disputed issues, the Second JWDR "specif[ied] in a clear and concise fashion the exact basis or bases for the objection(s) to each discovery request and the proponent's response thereto." *Id*. Also, the parties supplied "copies of the complete original discovery request[s] at issue and the corresponding answer or objection." *Id*.

Notably, Plaintiff specifically requested the rejection of Defendants' objections and/or claimed privileges in the Second JWDR. (Second JWDR, pgs. 6-8, 13, 18, 20, 23, 26, 31-32). Also, Defendants did not request a hearing or additional briefing on the issues presented in the Second JWDR. (CMPs, "Discovery Disputes," Subsection C, *Discovery Motion Practice*, pg. 3) ("The Court will not consider any motions pertaining to unresolved discovery disputes unless the movant has demonstrated a good faith attempt to comply with sections A and B."). Indeed, as to the issues presented in the Second JWDR, the docket was silent between its submission and its resolution by the Court.

From these circumstances, the Court, with good reason, deduced that the matters briefed in the Second JWDR were ripe for a ruling under its discovery dispute resolution procedures, which serve to expedite, albeit informally, the review of parties' discovery disputes. And, for this reason, that process usually proceeds without a hitch or any fuss from the parties, as they may obtain quick rulings stemming from their own collaborative efforts in the case. As the Court has constantly noted, though, this case has not always proceeded through discovery as usual. To the contrary, on even routine matters, not to mention those of genuine and understandable dispute, the parties have chosen the path of most resistance, the Court's handholding, and an apparent battle of wills and possibly personalities.

This time, in the Motion for Reconsideration, Defendants posit that the Court erred in overruling their objections to Request No. 4 in Plaintiff's Third Set of Requests for Production, which was never the subject of a motion to compel under Federal Rule of Civil Procedure 37. (Doc. 184, pg. 1). Even though they did not request a hearing, Defendants state they "expect[ed] that the Court would set a hearing on the Second JWDR and advise the parties and, if the parties still were unable to resolve the disputes after the Court's advice, Plaintiff would file a Motion to Compel." (Doc. 184, pg. 9 n. 4).

Request No. 4 in Plaintiff's Third Set of Requests for Production states: "Provide all documents maintained by Wexford regarding deaths in custody at Menard from 2012-2018." (Second JWDR, Exhibit A, pg. 3; Doc. 184, pgs. 1-2).[2] More specifically, Defendants

---

[2] Plaintiff subsequently limited the request to the years 2014 to 2018. (Second JWDR, pg. 12).

4

argue the Court "misunderstood" their objections based on the overbreadth, disproportionality, untimeliness, and burden of "review[ing]…deaths…for any reason at a given facility." (Docs. 177, pgs. 18-21; 184, pgs. 2-3, 8-9). Defendants explain:

> [F]or the request seeking records from 53 different prisoners, the vast majority of which died from unrelated causes, Plaintiff waited to raise this issue with the Court until a time in which Defendants could not comply within the remainder of discovery. Further, Utilization Management Records, Death Notices and Summaries have very little to no value without the medical records of the patient and an expert competent to provide medical opinions. Plaintiff has neither. However, the Order on the second JWDR does not appear to meaningfully address these objections, but finds, without explanation, that the documents are important to the issues in the case and have a likely benefit. Most significantly, the Court did not address Defendants' arguments that without the medical records of the prisoners or expert opinions related thereto, how these records are proportionate to the needs of the case.

(Doc. 184, pgs. 6-7).

Defendants emphasize, pursuant to the Memorandum & Order at Doc. 177, Plaintiff will receive dehydration-related death records of prisoners from across the country and intoxication/overdose-related death records of prisoners from the IDOC. (Doc. 184, pg. 7). Therefore, in Defendants' view, further productions related to deaths *from other causes* at Menard, as contemplated by Request No. 4, is disproportionate to the needs of the case in light of the burden of production on Defendants. (Doc. 184, pg. 7).

Defendants also state they "were surprised not only that the Court ruled on [the] objections without a hearing or a Motion to Compel, but also appears to have considered objections waived that were not brief[ed] expansively in the Second JWDR, even if they were lodged in the discovery requests." (Doc. 184, pg. 9 n. 4). Defendants note the Court did not consider certain objections made in their Response to Plaintiff's Third Set of

5

Requests for Production since "they were not expanded on in the Second JWDR," which it did not believe required a full briefing of the party's positions. (Docs. 177, pg. 17 n. 2; 184, pgs. 3, 9).[3] Defendants continue, "based on the Court's procedures and the history of this case, Defendants were informed that the JWDR was to be a concise summary of disputes and not a full briefing in lieu of a motion to compel." (Doc. 184, pg. 3). In short, Defendants suggest they have not been fully heard on the objections/privileges. (Doc. 184, pgs. 3, 9). Defendants reason: "a [privilege log] or categorical ruling on the privileges before the documents have been identified is premature, and Defendants respectfully request the Court reconsider its ruling, to the extent the Court intended on overruling privilege objections to documents not yet identified." (Doc. 184, pgs. 3, 8-14).

Finally, Defendants note the Court's Memorandum & Order did not contain a deadline for productions. (Doc. 184, pg. 3). According to Defendants, the productions at issue will necessitate a 90-day extension of the deadlines for discovery, filing dispositive and *Daubert* motions, and the Final Pretrial Conference and Trial. (Doc. 184, pg. 3).

In Response, Plaintiff argues the documents at issue were requested over a year ago, on December 22, 2022, so the productions are now long overdue. (Doc. 189, pgs. 1-2). Plaintiff states Defendants nevertheless ask the Court to reverse its "thorough, 31-page Order," rather than attempt to comply with that Order and bring discovery to a close.

---

[3]To Defendants' point, in its Memorandum & Order, the Court stated:

> [I]n the JWDR, Defendants Wexford and Leven do not expand upon every objection raised in written discovery. The Court limits its rulings to the arguments, presented in the JWDR, deemed worthy of discussion.

(Doc. 177, pg. 17 n. 2).

6

(Doc. 189, pg. 1). In doing so, Plaintiff argues Defendants seek for the Court to "wholly sustain" their boilerplate objections to Request No. 4 to Plaintiff's Third Set of Requests for Production and to allow them to assert privileges at an undefined time in the future. (Doc. 189, pgs. 1-2, 6). Plaintiff suggests Defendants "do nothing more than rehash their previous, unsuccessful arguments against disclosure," as the Court adequately addressed Defendants' objections on the basis of proportionality/relevance and timeliness, already ruled on the applicability of certain privileges in this case, and noted Defendants did not produce a privilege log or expand upon other privilege objections in the Second JWDR. (Docs. 157; 177, pgs. 16-20, n. 2; 189, pgs. 1-2, 6, 13-17).

By extension, Plaintiff suggests Defendants waived their privilege objections and should not now be let off the hook by the Court, as they still have not produced a privilege log or "even bothered to conduct a good-faith review for responsive documents." (Doc. 189, pgs. 2, 7-13). Finally, Plaintiff argues the Court's CMPs "expressly direct" the specification of the exact basis or bases for objections to discovery requests and the proponent's response, such that Defendants cannot now complain that their submissions in the Second JWDR were partial or incomplete absent a hearing or motion to compel. (Doc. 189, pg. 8 n. 4). Though the First JWDR was the subject of a hearing and supplemental briefing at the Court's discretion, Plaintiff argues "the vast majority" of the issues were resolved without further briefing and neither party had an expectation for further briefing. (Doc. 189, pg. 8 n. 4). Plaintiff seeks a denial of the Motion and fees and costs associated with the preparation of her Response. (Doc. 189, pgs. 2, 18).

7

Here, with respect to Request No. 4 of Plaintiff's Third Set of Requests for Production, the Court's Memorandum & Order at Doc. 177 found as follows:

> Request No. 4 in Plaintiff's Third Set of Requests for Production states: "Provide all documents maintained by Wexford regarding deaths in custody at Menard from 2012-2018." (Exhibit A, pg. 3)….Plaintiff indicates, like Request No. 7, she has narrowed Request No. 4 to the years 2014 to 2018. (JWDR, pg. 12). Plaintiff submits, according to the IDOC's Adult Institution Inmate Deaths chart, Request No. 4 would include documentation related to 42 individuals. (JWDR, pg. 12)….Plaintiff posits, "[t]here can be no dispute that documents about other deaths at the prison where…[Decedent] died…are centrally relevant." (JWDR, pg. 13).
>
> In their Responses to Requests Nos. 4 and 6, Defendants Wexford and Leven invoke many of the same objections that were raised in response to Request No. 7. (Exhibit A, pgs. 3-4). In the JWDR, Defendants Wexford and Leven argue Requests Nos. 4 and 6 are overbroad, unduly burdensome, and disproportionate. (JWDR, pg. 14). Also, in addition to the objections related to timeliness and the burden of production, Defendants Wexford and Leven note Plaintiff now seeks information on the deaths, by any cause, of prisoners in other states. (JWDR, pg. 14). Despite Plaintiff's suggestion to the contrary, Defendants Wexford and Leven submit that would implicate 53 deaths between 2014 and 2018. (JWDR, pg. 14). Most of those deaths, however, were allegedly caused by cancer, advanced heart disease, or suicide. (JWDR, pg. 14). Defendants Wexford and Leven state "there is no feasible way" they could make the requisite productions in time for Plaintiff's experts to review and provide opinions on those deaths before the close of discovery. (JWDR, pg. 14). If the requested documents were really necessary or reasonable, then Plaintiff would have sought them sooner. (JWDR, pg. 14).
>
> Here, Defendants Wexford and Leven again fail to expand on any claimed privilege. It is also unclear whether, as to these documents, Defendants Wexford and Leven provided a privilege log. In any event, the Court fails to see how Defendants Wexford and Leven, in light of Plaintiff's claims, can argue "documents maintained by Wexford regarding deaths in custody at Menard" are not relevant or proportional to the needs of the case. Obviously, such documents are important to the issues in the case and its resolution. As such, the Court finds the burden or expense of producing the documents does not outweigh the likely benefit. The objection(s) by Defendants Wexford and Leven to producing "documents maintained by

> Wexford regarding deaths in custody at Menard," as limited by Plaintiff to 2014 to 2018, is **OVERRULED**.

(Doc. 177, pgs. 18-20).

Now, lest there be any further misunderstanding, the Court clarifies its opinion that Request No. 4 of Plaintiff's Third Set of Requests for Production is not overbroad, disproportionate, or untimely. Defendants must conduct a reasonable review for "documents maintained by Wexford regarding deaths in custody at Menard" from 2014-2018. The Court understands Defendants' belief that the documents "have very little to no value without the medical records of the patient and an expert competent to provide medical opinions," but it is striking to the Court that Defendants feel they are in a position to make that blanket statement about Plaintiff's needs in discovery. (Doc. 184, pgs. 6-7). In essence, Defendants ask Plaintiff and, by extension, the Court, to simply take their "word for it," completely ignoring the subsequent steps Plaintiff might feel compelled to take once the documents are actually produced by Defendants. It is notable, too, that Plaintiff argues the documents at issue were requested over a year ago. (Doc. 189, pgs. 1-2). That said, it appears true Defendants, justifiably or not, could not "comply within the remainder of discovery." The discovery deadline lapsed on December 18, 2023, and every indication is that the parties remain ensnared in discovery battles. (Docs. 186 & 196).

Further, the Court clarifies that it did not intend to deem any of Defendants objections, as stated in its Responses to Plaintiff's Third Set of Requests for Production, waived by virtue of their omission from the Second JWDR. As the Court clearly noted in the Second JWDR, "[t]he Court limit[ed] its rulings to the arguments, presented in the

9

JWDR, deemed worthy of discussion." (Doc. 177, pg. 17 n. 2). Clearly, then, Defendants are correct that the Court did not consider certain objections made in their Response to Plaintiff's Third Set of Requests for Production, as "they were not expanded on in the Second JWDR." (Doc. 184, pgs. 3, 9). In short, the Court issued a Memorandum & Order limited to the issues and arguments specifically briefed in the Second JWDR. As Defendants themselves note, the Court did not set a deadline for the production of the documents, which further indicates the intended limits of the Court's ruling and the need of the parties to further engage in the meet, confer, and report process.

In any event, as noted above, Defendants suggest they have not been fully heard on certain objections or privileges. (Doc. 184, pgs. 3, 9). Therefore, although the Court is highly skeptical of the propriety of claiming privileges before completing a full and reasonable review for requested documents, as Plaintiff alleges, the Court **ORDERS**:

1. The Motion for Reconsideration is **DENIED**. However, the Court **RESERVES** the question of fees and costs to Plaintiff, as she requests.

2. Defendants shall continue their reasonable, good-faith review for documents subject to Request No. 4 of Plaintiff's Third Set of Requests for Production.

3. Upon completing that reasonable, good-faith review for documents subject to Request No. 4 of Plaintiff's Third Set of Requests for Production, Defendants shall tender a privilege log to Plaintiff that outlines the specific privileges, raised in their Responses to Plaintiff's Third Set of Requests for Production, that are applicable to the documents found as a result of their

reasonable, good-faith review. Defendants' Counsel shall, for each document to which a privilege claim is raised, describe the means by which she determined the efficacy of such claim without first having made a reasonable review of the corresponding document.

4. Within 21 days of receiving Defendants' privilege log, Plaintiff, if necessary, may move to compel the documents withheld by Defendants on the basis of any claimed privilege(s). Plaintiff shall wait until that time to present any arguments on the merits of Defendants' privilege claim(s). If this course of action is necessary, then Defendants shall have 14 days within which to respond to the motion to compel, wherein it shall defend its invoked privilege(s) against Plaintiff's arguments.

5. Because the Court has already expended unusual levels of judicial resources in managing the parties and discovery disputes, and since the history of this case may be a reliable indicator of future expectations, the Court is considering the appointment of a special master under Federal Rule of Civil Procedure 53 to oversee the parties as they struggle to complete the discovery process. To that end, within 21 days of this date, the parties are **DIRECTED** to file a Memorandum in Support of or in Opposition to the Appointment of a Special Master under Rule 53 for Discovery Purposes.

6. In light of this ruling, all scheduling and discovery deadlines are **RESET**. All discovery is due April 1, 2024; Dispositive and *Daubert* motions are due

        May 1, 2024; the Final Pretrial Conference is scheduled for September 12, 2024, at 10:00 a.m.; and the Jury Trial is scheduled for September 23, 2024, at 9:00 a.m. An Amended Scheduling and Discovery Order will be separately entered on the docket.

7. Also, in light of this ruling, Plaintiff's Motion to Enforce Discovery (Doc. 196) is **DENIED without prejudice**. The parties are **DIRECTED** to meet and confer on the issues raised in that Motion. If the parties are unable to resolve the dispute on their own, then they are **FURTHER DIRECTED** to file a Third Joint Written Discovery Report under the Court's CMPs. Any party to this process who obviates discovery or compliance with the Memorandum & Order at Doc. 177, as clarified herein, **will be subject to sanctions**.

**SO ORDERED.**

Dated: January 25, 2024.

                                                  s/ *David W. Dugan*
                                                  DAVID W. DUGAN
                                                  United States District Judge