IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YOLANDA JACKSON, as Administrator of the Estate of Kevin Curtis, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-cv-0900-DWD |
| WEXFORD HEALTH SOURCES, INC., et al., | ) ) ) ) | |
| Defendants. | ) | Hon. David W. Dugan |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION TO EXCLUDE MOEIN HEIDARI**

Sarah Grady
Howard Kaplan
Nabihah Maqbool
David A. Schmutzer
Adam J. Smith
KAPLAN & GRADY LLC
2071 N. Southport Ave., Suite 205
Chicago, IL 60614
(312) 852-2184
sarah@kaplangrady.com

*Attorneys for Plaintiff*

In their response to Plaintiff's Motion to Exclude Moein Heidari, the Wexford Defendants (subsequently referred to as Wexford for simplicity) focus primarily on their criticisms of Plaintiff's retained expert, Dr. Ryan Herrington. But that is a distraction. As Wexford concedes, the present motion is "not [a] Motion to Bar Dr. Herrington." Dkt. 246 at 13. Plaintiff thus does not address those issues, many of which were raised in Wexford's motion to bar Dr. Herrington and to which Plaintiff has separately responded. *See generally* Dkt. 215; Dkt. 262.

The thrust of Wexford's remaining arguments is that Mr. Heidari, as a "methodologist," can serve as a roving reliability expert, able to criticize any expert opinion, regardless of whether he has familiarity with the topic or particular type of review, and notwithstanding the fact that he did not personally examine any of the evidence that the expert at issue did review. Wexford further argues that Mr. Heidari's testimony will be helpful to the jury based on opinions that Mr. Heidari has not offered in his reports. Wexford also claims that Mr. Heidari's opinions about the review of patient records should be permitted, despite the fact that Mr. Heidari has no expertise or experience in reviewing patient records. Finally, Wexford claims that, despite the fact that Mr. Heidari had no involvement in responding to the 2014 *Lippert* Report, he should be permitted to opine about its contents, in violation of the Federal Rules of Evidence. These arguments have no merit. Mr. Heidari's testimony should accordingly be barred.

**I.      Mr. Heidari Is Not Qualified to Serve as a Roving Reliability Expert**

Wexford argues that, based on his experience as a "methodologist," Mr. Heidari can critique qualitative studies like the one Dr. Herrington performed and the method with which Dr. Herrington determined causation. Wexford takes this position even though Mr. Heidari has no experience or expertise in qualitative analysis or causation. In fact, Wexford claims that Mr. Heidari is qualified to opine on the sufficiency of *any* expert review, regardless of the topic

involved or the degree to which Mr. Heidari has familiarity with the type of review at issue. That is not the case. To the contrary, the Seventh Circuit has instructed district courts to "look at each of the conclusions [an expert] draws individually to see if he has the adequate education, skill, and training to reach them." *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016); *see also Pessman v. Trek Bicycle Corp.*, 2021 WL 5769530, at *4 (N.D. Ill. Dec. 6, 2021) (excluding expert who had education in the field generally but was not qualified to opine on the particular subset of the field at issue in the case).

In support of its sweeping claim of universal expertise, Wexford cites *Parish v. Sheriff of Cook County*, 2018 WL 1811330, at *2 (N.D. Ill. Apr. 17, 2018). But *Parish* does not support admission of Mr. Heidari's testimony in this case. In *Parish*, the district court found that a statistician who *affirmatively performed* a quantitative analysis of evidence in the case satisfied Rule 702 and *Daubert* because, although he was not a medical professional, he could apply his quantitative analytical skills to reach opinions about what the medical data revealed statistically. *Id.* at *2-4.[1] In contrast to the expert in *Parish*, Mr. Heidari did not apply any relevant expertise to perform a quantitative analysis in this case. Mr. Heidari's opinions are limited to criticizing Dr. Herrington for not applying certain characteristics of quantitative analysis—despite the fact that Dr. Herrington never purported to perform a quantitative analysis, and despite the fact that the Seventh Circuit's precedents make clear such actions are not required to establish a widespread practice. *See, e.g.,* Dkt. 231 at 8-12; *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006) (holding that a plaintiff "need not present a full panoply of statistical evidence showing the entire gamut of

---

[1] The other cases cited by Wexford similarly involve quantitative experts who affirmatively opined on a review of evidence (rather than purporting to critique a qualitative study). *See, e.g., Yasmin & Yax Mktg. Sales Prac. & Prods. Litig.*, 2011 WL 6302573, at *16-17 (S.D. Ill. Dec. 16, 2011); *Rheinfrank v. Abbott Labs, Inc.*, 2015 WL 13022172, at *12-13 (S.D. Ohio Oct. 2, 2015); *Glynn v. Merck Sharp & Dohme Corp.*, 2013 WL 1558690, at *8 (D.N.J. Apr. 10, 2013); *In re Pfizer Inc. Sec. Litig.*, 2010 WL 1047618, at *4 (S.D.N.Y. Mar. 22, 2010).

a defendant's past bad acts to establish a widespread practice or custom'). Dr. Herrington's thorough review of records in this case was a qualitative one, and Mr. Heidari has admitted that he is "not an expert in the methodology – methodologies of qualitative studies" and has no experience with qualitative studies in healthcare. Dkt. 231-5 at 66, 94-95. He is thus unqualified to offer expert testimony about the methodology of Dr. Herrington's qualitative study.[2]

## II.     Wexford's Response Asserts Opinions Mr. Heidari Has Not Disclosed

In its response brief, Wexford reports that Mr. Heidari will inform the jury that studies should "have components of quantitative and qualitative analysis[,]" Dkt. 246 at 9, because "[q]uantitative data is what determines frequency, trends, and projections." *Id.* at 10. The problem for Wexford is that Mr. Heidari has not offered any such opinions in either of his reports. A large majority of Wexford's assertions about what testimony Mr. Heidari will offer do not reference his report. Indeed, some of those assertions reference third-party information that Mr. Heidari neither reviewed nor discussed. *See, e.g., id.* at 9-10 (citing web pages published by LaSalle University and National Geographic, among others); *see also generally* Dkt. 231-4; Dkt. 231-6.

As Plaintiff explained in her motion, the actual opinions expressed by Mr. Heidari in his reports criticize Dr. Herrington for not performing a type of study—i.e., a purely quantitative one—that (1) the law does not require, (2) Dr. Herrington did not purport to do, and (3) Mr. Heidari did not do either. *See* Dkt. 231 at 8-12. None of the opinions that Wexford asserts will be helpful to the jury, including an explanation as to *why* quantitative functions should be incorporated into

---

[2] Wexford contends that because Plaintiff did not specifically discuss every statement in Mr. Heidari's report, any objection to them has been waived. Not so. Plaintiff has moved to exclude Mr. Heidari's testimony in this case in its entirety, arguing that he generally lacks the qualifications to opine on Dr. Herrington's report and that his opinions as a whole are irrelevant and therefore will not be helpful to the jury. *See generally* Dkt. 231. It is *Wexford* who bears the burden to establish that each of Mr. Heidari's opinions satisfies each of the requirements of Rule 702 and *Daubert*. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017).

a qualitative analysis or what role quantitative studies play in this field, appear in the report. *See generally* Dkt. 231-4. And even if they did, Mr. Heidari would not be qualified to offer them, as he admits he has no experience or expertise in qualitative studies. Dkt. 231-5 at 66, 94-95. Accordingly, his opinions should be barred.

**III.    Mr. Heidari's Opinions Misstate the Law and Will Cause Substantial Jury Confusion**

At bottom, Mr. Heidari's report asserts that a widespread practice cannot be determined without statistically significant proof and random sampling. *See, e.g.,* Dkt. 231-4 at 6-7. That is not the law. *See* Dkt. 231 at 10-12; Dkt. 262 at 8. If Mr. Heidari is permitted to offer such testimony, it will require repeated and substantial curative instructions from the Court about what the law is and the role of the Court, rather than a party's expert, to instruct the jury on what the law requires. *See Sanders v. City of Chi. Heights*, 2016 WL 4417257, at *6 (N.D. Ill. Aug. 19, 2016) (excluding expert testimony on "the legal standards" at issue because "any such legal opinions are not only inadmissible, but would have the tendency to confuse the jury as to their role in the proceedings").

Notably, the only way to effectively cross-examine Mr. Heidari's opinion that a widespread practice must be proven through a quantitative analysis with statistically significant evidence via random sampling is for Plaintiff's counsel to point to the wealth of case law that establishes the opposite, which would obviously be inappropriate. Wexford argues that exclusion of Mr. Heidari on this basis would be tantamount to foreclosing Defendants from arguing that her evidence is insufficient. Dkt. 246 at 22. But that is simply not the case. Wexford's representatives and employees will presumably testify that no such widespread practices existed during the relevant time frame, and Wexford's attorneys can cross-examine Dr. Herrington on what they perceive as shortcomings in his analysis. Wexford will be free to argue from this evidence that Plaintiff has not satisfied her burden.

Of course, Wexford could have retained a qualified expert who looked at the evidence Dr. Herrington reviewed or additional evidence and reached a different conclusion. Wexford attempted something similar in another recent case, where its correctional medical expert witness opined that he did not believe the cases reviewed by Dr. Herrington demonstrated a pattern of deficient medical care. *See Bost v. Wexford*, 2022 WL 4290528, at *56 (D. Md. Sept. 16, 2022).[3] For whatever reason, Wexford made a choice not to retain any such expert in this case and instead retained Mr. Heidari, who lacks relevant expertise and whose testimony will confound the jury regarding the appropriate legal standard.

### IV. Mr. Heidari Is Clearly Unqualified to Offer Critiques of Dr. Herrington's Review of Individual Patient Files

Wexford concedes that Mr. Heidari has no medical training or expertise. Dkt. 246 at 15. Wexford asserts that he is nevertheless qualified to "question Dr. Herrington's review" because these questions supposedly do not require medical expertise. *See, e.g.,* Dkt. 246 at 16 ("[I]t does not take a medical professional to ask the question—could he have survived the brain bleed and, if so, how?"). But in that case, Mr. Heidari's testimony should also be excluded. As explained in Plaintiff's earlier-filed reply, lay opinions from purportedly expert witnesses who had no involvement in the matter are not admissible. *See* Dkt. 275 at 3 (citing *United States v. Conn*, 297 F.3d 548, 553-54 (7th Cir. 2002); *Saathoff v. City of Champaign*, 2015 WL 13309437, at *2-3 (C.D. Ill. May 20, 2015)). In any event, the so-called "questions" that Mr. Heidari raises *do* require medical expertise, because it requires expertise to assess why *those* are the pertinent questions about the patient's medical care as opposed to other questions regarding other medical data. *See* Dkt. 231 at 13-16.

---

[3] Ironically, Wexford's expert in the *Bost* case opined that Dr. Herrington's review of 16 cases "amounted to an adequate sampling" that did not require "further statistical analysis" for representativeness, even though the expert disagreed with Dr. Herrington's ultimate conclusion. 2022 WL 4290528, at *56.

Wexford next asserts that Mr. Heidari is able to opine on Dr. Herrington's medical conclusions, notwithstanding his complete lack of any expertise in the medical field, because "[a]s a quantitative methodologist who creates and evaluates healthcare studies, Mr. Heidari has expertise in identifying and address the importance of causal analysis and data-driven conclusions." Dkt. 246 at 17. But Mr. Heidari has expressly disavowed any expertise or experience in determining causation. Dkt. 231-5 at 36-37 ("We – we look for evidence for relationship[s] between variables. It's – but it's never – to say that it's causation"; [W]e don't do causality – determination of causality."); *see also id.* at 37 (admitting that, as a statistician and methodologist regarding quantitative analysis, he does not "conclude causality").

Leaving causation of death to the side, several of Mr. Heidari's so-called "questions" of Dr. Herrington's review of each individual's provision of medical require medical expertise, which Mr. Heidari admittedly does not have, or else require expertise from someone who is an expert in qualitative studies of healthcare, which Mr. Heidari has admitted he is not. Dkt. 231-5 at 66, 94-95. Accordingly, these opinions must be excluded.

**V.      Mr. Heidari's *Lippert* Report Criticism Is Inadmissible**

For all of the reasons cited above and in Plaintiff's motion to exclude Mr. Heidari, Mr. Heidari's opinions on the 2014 *Lippert* Report do not satisfy Rule 702 or *Daubert*. In response, Wexford asserts that "the parties agree that the *Lippert* monitors' reports are hearsay and should not be admitted." Dkt. 246 at 26. Not so. A fair reading of Plaintiff's motion makes clear that the 2014 *Lippert* Report in particular *is* admissible for nonhearsay purposes—*i.e.*, for the purposes of notice, and not for the truth of the matter asserted. Dkt. 231 at 18 (citing *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 237-39 (7th Cir. 2021)).

Wexford next asserts that "the parties agree that Mr. Heidari's opinions as it relates to *Lippert* should not be admitted." Dkt. 246 at 26. If the Court were to take Wexford at its word, that would end the discussion on the admissibility of Mr. Heidari's opinions regarding the 2014 *Lippert* Report. Wexford nevertheless asserts that unidentified "plaintiffs" have "attempted to use *Lippert* as per se evidence that unconstitutional practices existed across the IDOC population[,]" which it contends warrants a response from Mr. Heidari. *Id.* To repeat, Plaintiff does not intend to introduce the 2014 *Lippert* Report to establish the truth of its contents. Instead, Plaintiff intends to introduce evidence of the 2014 *Lippert* Report to establish that Wexford was on notice of the dangerous consequences of its widespread practices long before Mr. Curtis was ever incarcerated. *See* Dkt. 231 at 18. Indeed, the Seventh Circuit recognized that, with respect to the 2014 *Lippert* Report, a court "should hesitate to hold that evidence is inadmissible under Rule 403" when the evidence is probative of an element of a *Monell* claim, like it is for notice in this case. *Dean*, 18 F.4th at 234.

Regardless of whether Plaintiff introduces evidence of the 2014 *Lippert* report, however, Mr. Heidari should not be allowed to opine about the substance of the report unless Plaintiff is afforded the same opportunity. As Plaintiff explained in her motion to bar Mr. Heidari's testimony, permitting Mr. Heidari to criticize the substance of the report—given the fact that he only encountered it after Mr. Curtis's death—will undoubtedly open the door to permit Plaintiff to use this evidence not just for the purpose of notice, but also for its substance. Dkt. 231 at 17-19. Wexford offers no response to that argument. Accordingly, this Court should either bar Mr. Heidari from offering post-hoc opinions about the legitimacy of the 2014 *Lippert* Report, or else find that upon doing so, Wexford has opened the door to permit the jury to consider the contents of the 2014 *Lippert* Report on its merits.

Dated: July 9, 2024

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Sarah Grady
Howard Kaplan
Nabihah Maqbool
David A. Schmutzer
Adam J. Smith
KAPLAN & GRADY LLC
2071 N. Southport Ave., Suite 205
Chicago, IL 60614
(312) 852-2184
sarah@kaplangrady.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Sarah Grady, an attorney, hereby certify on July 9, 2024, I caused the foregoing to be filed using the Court's CM/ECF, which effected service on all counsel of record.

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff